IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
_____
DR JEFFREY DAVID ISAACS,        :
                                :
          Plaintiff,            :
                                :
          v.                    :   CASE NO.:  13-CV-5708-PBT
                                :
TRUSTEES OF DARTMOUTH COLLEGE,  :
ARIZONA BOARD OF REGENTS,       :
DR. MARC BERTRAND,              :
DR. JIM YONG KIM,               :
EDWARD KAPLAN, KATHLEEN PEAHL,  :
DR. AMY WAER; MARY HITCHCOCK    :
MEMORIAL HOSPITAL; UNIV.        :
ARIZONA HEALTH SCIENCE CENTER,  :
AND JOHN DOE #1 & #2            :
                                :
          Defendant.            :
_____:
```

**ORDER**

AND NOW, this ___ day of _____, 2013, after consideration of the Motion to Dismiss of Defendants, the Trustees of Dartmouth College, Dr. Jim Yong Kim, and Kathleen C. Peahl, Esquire, and any response thereto, it is hereby ORDERED that the motion is GRANTED.  The complaint of plaintiff Dr. Jeffrey David Isaacs is hereby DISMISSED WITH PREJUDICE as to the Trustees of Dartmouth College, Dr. Jim Yong Kim, and Kathleen C. Peahl.

BY THE COURT:

_____
Petrese B. Tucker, Chief Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| DR JEFFREY DAVID ISAACS, : | |
|        Plaintiff, : | |
| : | |
|     v. : | CASE NO.: 13-CV-5708-PBT |
| : | |
| TRUSTEES OF DARTMOUTH COLLEGE,: | |
| ARIZONA BOARD OF REGENTS, : | |
| DR. MARC BERTRAND, : | |
| DR. JIM YONG KIM, : | |
| EDWARD KAPLAN, KATHLEEN PEAHL,: | |
| DR. AMY WAER; MARY HITCHCOCK : | |
| MEMORIAL HOSPITAL; UNIV. : | |
| ARIZONA HEALTH SCIENCE CENTER,: | |
| AND JOHN DOE #1 & #2 : | |
|        Defendants. : | |

---

**MOTION TO DISMISS THE COMPLAINT AGAINST DEFENDANTS TRUSTEES OF DARTMOUTH COLLEGE, DR. JIM YONG KIM, AND KATHLEEN C. PEAHL, ESQUIRE**

For the reasons set forth in the accompanying memorandum of law, Defendants the Trustees of Dartmouth College, Dr. Jim Yong Kim, and Kathleen Peahl, Esquire respectfully move this Court to dismiss the complaint under Rule 12(b)(2) and Rule 12(b)(6) for lack of jurisdiction and failure to state a claim upon which relief can be granted or, alternatively, to transfer to the District of New Hampshire.

/s/ Neil J. Hamburg
NEIL J. HAMBURG (ID No. 32175)
JODI S. WILENZIK (ID No. 89205)
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA 19103-1443
(215) 255-8590

Attorneys for Defendants
The Trustees of Dartmouth College,
Dr. Jim Yong Kim and

Dated: October 24, 2013    Kathleen Peahl, Esquire

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

DR JEFFREY DAVID ISAACS,                     :
                                             :
          Plaintiff,                         :
                                             :
          v.                                 :     CASE NO.:  13-CV-5708-PBT
                                             :
TRUSTEES OF DARTMOUTH COLLEGE,:
ARIZONA BOARD OF REGENTS,                    :
DR. MARC BERTRAND,                           :
DR. JIM YONG KIM,                            :
EDWARD KAPLAN, KATHLEEN PEAHL,:
DR. AMY WAER; MARY HITCHCOCK  :
MEMORIAL HOSPITAL; UNIV.                     :
ARIZONA HEALTH SCIENCE CENTER,:
AND JOHN DOE #1 & #2                         :
                                             :
          Defendant.                         :

---

**MEMORANDUM OF LAW OF DEFENDANTS TRUSTEES OF DARTMOUTH COLLEGE,
DR. JIM YONG KIM, AND KATHLEEN C. PEAHL, ESQUIRE
<u>IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT</u>**

**TABLE OF CONTENTS**

                                                                    PAGE

I.    INTRODUCTION                                                    1

II.   BACKGROUND                                                      4

      A.    Procedural Background                                     4

      B.    The Parties in the Pennsylvania                           4
            Litigation Have Minimal Connections with
            Pennsylvania

      C.    The Allegations in the Complaint Have                     9
            Nothing To Do with Pennsylvania

III.  ARGUMENT                                                       11

      A.    Standard of Review                                       11

      B.    This Court Should Dismiss this Complaint                 12
            Because It Lacks Personal Jurisdiction
            Over Dartmouth, Dr. Kim, and Ms. Peahl

            1.  The Court Lacks General Jurisdiction                 13
                Over Dartmouth, Dr. Kim, and Ms.
                Peahl

            2.  The Court Lacks Specific Jurisdiction                20
                Over Dartmouth, Dr. Kim and Ms. Peahl

      C.    In The Alternative, this Court May                       23
            Transfer This Case To the District Of
            New Hampshire, Where All Parties Would
            Be Subject to Personal Jurisdiction and
            Where Plaintiff Has Already Made the
            Same Claims

IV.   CONCLUSION                                                     24

## I.    INTRODUCTION

This litigation involves a repetitive *pro se* plaintiff who is dissatisfied with litigation he initiated in the District of New Hampshire (Civil Action No. 1:12-cv-00040-JL) related to his dismissal as a medical resident at Mary Hitchcock Memorial Hospital ("MHMH") in 2012 (the "New Hampshire Litigation").    A copy of the complaint and docket sheet in the New Hampshire litigation are attached as Exhibits A and B, respectively.[1]

Plaintiff had a somewhat unusual educational and court system history before being dismissed from the MHMH residency program for poor performance and lying on his residency application.    In 2005, plaintiff was a medical student at USC. USC dismissed plaintiff after conducting disciplinary proceedings for stalking a female classmate.    Plaintiff sued USC and that case is now concluded, and, contrary to the implication of allegations in plaintiff's Pennsylvania Complaint (Complaint, ¶2), that case has nothing to do with plaintiff's MHMH litigation either in New Hampshire or here.[2]

---

[1]    After the New Hampshire case began, plaintiff retained New Hampshire to represent him in the New Hampshire Litigation, but they later withdrew as counsel and now plaintiff is again representing himself in that litigation. Exhibit B, docket numbers 62 and 63.
[2]    In 2006, plaintiff sued the University of Southern California and individuals there in the United States District Court for the Central District of California, Civil Action No. 06-CV-3338-GAF (the "California Litigation"). The California District Court summarized that case, which has 86 entries on the docket, in a May 8, 2008, Order:

Pro se Plaintiff Jeffrey David Isaacs brought this action against the University of Southern California ("USC") and various individuals, alleging that he has been discriminated against because of his post-traumatic stress disorder and "Bipolar II Affective Disorder."    Isaacs contends that during his first year of medical school at USC, a fellow

After his dismissal from USC, plaintiff enrolled in and graduated from a medical school in the Caribbean.[3]  Then he began a residency program at the University of Arizona and resigned. (Complaint, ¶14)  He threatened to sue the University of Arizona for that dismissal.  (Complaint, ¶14)

MHMH accepted him into its residency program, which he attended from approximately June, 2011 through January, 2012, when MHMH dismissed him for poor performance and lying on his residency application.

---

female classmate ridiculed and harassed him, thereby exacerbating his medical disabilities.  According to Isaacs, administrators at the medical school did not help him overcome his emotional distress, but rather were influenced by the taunter's father, Robert Baughman, who is also the director of the National Institutes of Health Neurological Disease division, to retaliate against Isaacs and portray the taunter as a victim of stalking and harassment.  After administrative hearings regarding his alleged harassment of his classmate, Isaacs was suspended and dismissed from USC.

After two years of wrangling, Isaacs and USC reached a settlement and executed a Confidential Settlement Agreement and Mutual Release (the "Settlement").  Isaacs sought, through his law suit, to clear his record. He is now not sure whether the Settlement effectuates that goal.  As such, Isaacs wants to "void" the Settlement and refuses to dismiss his case, in contravention to the terms of the agreement.  Isaacs states that he was under duress when he entered into the agreement and that key provisions of the Settlement are unintelligible.  USC has filed a motion asking the Court to enforce the Settlement.

The Court concludes that Isaacs fails to put forth any grounds to void the Settlement.  As discussed in detail below, the mere fact that Isaacs claims to no longer know if the Settlement accomplishes his ultimate goal is not grounds to undo the agreement.  Accordingly, USC's motion to enforce the settlement is GRANTED.

The May 8, 2008, Order in its entirety and the docket sheet in the California action are attached as Exhibits E and F, respectively.

[3]    Plaintiff attended medical school at the American University of the Caribbean.  The first page of plaintiff's ERAS (Electronic Residency Application Service) application is attached as Exhibit C.

Plaintiff filed the New Hampshire Litigation against MHMH and Dartmouth College[4] to attempt to obtain relief for his dismissal as a resident at MHMH.[5]

Apparently dissatisfied with the progress of the New Hampshire Litigation, plaintiff filed this action in the Eastern District of Pennsylvania again attempting to address his dismissal from the New Hampshire residency program. Plaintiff's only connection to the Eastern District is that he appears to have returned to Pennsylvania after his dismissal.

In the instant Pennsylvania complaint, plaintiff names, among other parties, the Trustees of Dartmouth College ("Dartmouth"), along with the former president of Dartmouth and current President of the World Bank, Dr. Jim Yong Kim ("Dr. Kim"), and Dartmouth's trial counsel in the New Hampshire Litigation, Kathleen Peahl, Esquire. (Dartmouth, Dr. Kim, and Ms. Peahl are collectively referred to as the "Dartmouth Defendants.")

The Dartmouth Defendants move, under Federal Rule of Civil Procedure 12(b)(2), to dismiss the case for lack of personal jurisdiction and improper venue, or alternatively, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. If this Court decides to keep this

---

[4]     Faculty from Dartmouth's renown Geisel School of Medicine instruct the medical residents, like plaintiff, at MHMH.

[5]     Plaintiff named Dr. Kim, the then President of Dartmouth College, in the New Hampshire Litigation, however, upon filing his third amended complaint, plaintiff dismissed Dr. Kim from that suit.  Exhibit B, docket entry 54; Exhibit D, copy of Order dated March 5, 2013, dismissing Dr. Kim from the New Hampshire Litigation.   Dartmouth's former president, Dr. Kim, had nothing to do with plaintiff's dismissal from the residency program, nor with any of plaintiff's unsuccessful internal appeals. See Exhibit H, Kim Declaration, ¶10)

duplicative litigation alive, the Dartmouth Defendants respectfully request a transfer of venue to the United States District Court of New Hampshire, where all the parties are actually subject to the district court's jurisdiction, where it can be consolidates with the New Hampshire Litigation at the discretion of the court there, and where the district court is already dealing with plaintiff's frivolous complaints.

## II.  BACKGROUND

### A.  Procedural Background

This action is plaintiff's third use of the federal court system to complain about disruptions in his medical education. The California Litigation, in which plaintiff contested his expulsion from USC Medical School, had 86 entries in two years of litigation. In a little over a year and a half in the New Hampshire Litigation, which plaintiff filed on February 3, 2012, there are more than 100 docket entries. Exhibit B.

Ms. Peahl, is currently counsel to Dartmouth and Dartmouth employees in the New Hampshire Litigation and was counsel to Dr. Kim during the period that he was a defendant. Discovery is ongoing in the New Hampshire Litigation.

### B.  The Parties in the Pennsylvania Litigation Have Minimal Connections with Pennsylvania

Plaintiff sued the Dartmouth Defendants here presumably because he returned to Pennsylvania after being dismissed from the residency program. (Complaint ¶¶2-3)  All other allegations in the Complaint have nothing to do with Pennsylvania. See Complaint.

4

Defendant Dartmouth is an institution of higher education located in New Hampshire, with its principal place of business in the town of Hanover, New Hampshire. (Exhibit G, O'Leary declaration, ¶¶1-3, 9) Dartmouth is not authorized to do business in Pennsylvania (O'Leary declaration, ¶5), does not maintain an office or facility in Pennsylvania (O'Leary declaration, ¶6), and has no officers or employees in Pennsylvania.[6] (O'Leary declaration, ¶7) Dartmouth does not maintain a registered agent for service of process in Pennsylvania (O'Leary declaration, ¶10), does not maintain a bank account, post-office box, or phone listing in Pennsylvania (O'Leary declaration, ¶12), and does not obtain direct revenue from products sold or services rendered in Pennsylvania (O'Leary declaration, ¶8).

Dartmouth does not maintain a regional office in Pennsylvania. (O'Leary declaration, ¶17). Dartmouth does not own any real property in Pennsylvania (O'Leary declaration, ¶15) and, to the best of the knowledge of its Office of General Counsel, has never filed suit in this Commonwealth (O'Leary declaration, ¶14). Dartmouth was not served with process of this lawsuit while in Pennsylvania (O'Leary declaration, ¶4) and no activities of Dartmouth are controlled by any entity located in Pennsylvania

---

[6]    The "Dartmouth Club of Philadelphia," and the "Dartmouth Club of Pittsburgh," are groups of former students. The clubs organize social and networking activities. They do not have any employees, officers, or directors. (Exhibit G, O'Leary Declaration ¶18)

(O'Leary declaration, ¶11).

Dartmouth does have some *de minimus* contacts with the Commonwealth of Pennsylvania, as do all national colleges and universities. BNY Mellon holds some securities for Dartmouth at its headquarters in Pittsburgh, Pennsylvania; however Dartmouth's relationship with BNY Mellon is through BYN Mellon's Boston office. (O'Leary declaration, ¶13) Dartmouth maintains a website that is accessible to residents of states other than New Hampshire, including the Commonwealth of Pennsylvania. (O'Leary declaration, ¶16) Dartmouth attracts and admits students from a variety of states, including the Commonwealth of Pennsylvania (O'Leary declaration, ¶16); however, less than 3.4% of Dartmouth's undergraduates are from Pennsylvania and even a smaller percentage attend Dartmouth's graduate schools. (O'Leary declaration, ¶24) Dartmouth also receives donations from residents of a variety of states, including the Commonwealth of Pennsylvania.[7] (O'Leary declaration, ¶¶16,21) Dartmouth does not advertise in any Pennsylvania publication, but does some targeted direct advertising aimed at students in Pennsylvania and emails highly qualified Pennsylvania high school students who scored well on standardized tests. (O'Leary declaration, ¶20) Dartmouth also recruits student/athletes in Pennsylvania and Dartmouth's faculty and employees occasionally participate in conferences and visiting

---

[7]   Most of these donors are former students or family and friends of former students.

professorships in Pennsylvania. (O'Leary declaration, ¶¶22,23) Finally, less than .25% of Dartmouth's sponsored research funds have been subcontracted with Pennsylvania institutions. (O'Leary declaration, ¶27) None of these contacts relate to the allegations in plaintiff's complaint and cannot establish general jurisdiction over Dartmouth in Pennsylvania.

Dr. Jim Yong Kim is the former President of Dartmouth. Dr. Kim resigned this position in 2012 and is currently the President of the World Bank. Dr. Kim was a defendant in the New Hampshire Litigation and has since been dismissed from that lawsuit. Dr. Kim had nothing to do with plaintiff's dismissal from the New Hampshire residency program or to plaintiff's internal appeals of that dismissal. (Exhibit H, Kim declaration, ¶10) Dr. Kim does not own or lease any real or personal property located in the Commonwealth of Pennsylvania and conducts no business in this Commonwealth. (Kim declaration, ¶10) Dr. Kim is a resident of Washington, D.C. and has never resided in Pennsylvania. (Kim declaration, ¶¶3-4) Nor has Dr. Kim been employed by a Pennsylvania organization and he does not own a business or have any business affiliations in Pennsylvania. (Kim declaration, ¶¶7-8) Dr. Kim's only tie to Pennsylvania is that, during his Presidency at Dartmouth, Dr. Kim participated in fundraising functions in Pennsylvania with Dartmouth alumni and parents of students, including some golf games. (Kim declaration, ¶9) None of these connections with Pennsylvania are enough to

establish personal jurisdiction over Dr. Kim, who has nothing to do with this case.

Ms. Peahl is an attorney in New Hampshire. (Exhibit I, Peahl declaration, ¶2) She represents Dartmouth in the New Hampshire Litigation and represented Dr. Kim in that litigation until he was dismissed from it. Ms. Peahl is a member in good standing of the bar of the New Hampshire Supreme Court and is admitted to practice in the United States District Court for the District of New Hampshire and in the New Hampshire state courts. (Peahl declaration, ¶2) Ms. Peahl has never lived in Pennsylvania, does not own real property in Pennsylvania. (Peahl declaration, ¶¶3-4) Ms. Peahl is not licensed to practice law in Pennsylvania, she has never practiced law in Pennsylvania, and has never even been admitted *pro hac vice* in a case in Pennsylvania. (Peahl declaration, ¶¶6) Ms. Peahl does not own a business or have any business affiliations in Pennsylvania, nor has she ever conducted business activities in Pennsylvania. (Peahl declaration, ¶7) Finally, Ms. Peahl's only contacts with Pennsylvania before this lawsuit were that she was stranded at Philadelphia International Airport for two days, and, as a child, visited Erie, Pennsylvania. (Peahl declaration, ¶8) Ms. Peahl has no connection to Pennsylvania that could remotely subject her to personal jurisdiction here.

**C.    The Allegations in the Complaint Have Nothing To Do with Pennsylvania.**

The Complaint contains five causes of action. Count I alleges that the John Doe defendants and defendants he also named in the New Hampshire Litigation, conspired against plaintiff, resulting in his termination from medical training in New Hampshire (Complaint ¶¶29-32); Count II alleges that unspecified "Defendants" intended to cause severe emotional distress to plaintiff (Complaint ¶¶33-35); Count III alleges that Dartmouth and Mary Hitchcock Memorial Hospital breached an unidentified contract by offering a "late Fair Hearing" (Complaint ¶¶36-39); Count IV alleges the non-Arizona defendants obstructed justice in the New Hampshire Litigation (Complaint ¶¶40-46); Count V alleges that plaintiff is entitled to injunctive relief against Defendant Dartmouth, demanding Dartmouth cease the alleged conspiracy and denying plaintiff medical training because he was involved with the California Litigation (Complaint ¶¶47-50).

None of the conduct alleged in the complaint occurred in Pennsylvania, none of the alleged activities relates to Pennsylvania, and all of the allegations in this Pennsylvania case relate to or are explicitly part of the New Hampshire Litigation. Plaintiff even attempts to create some connection between the instant allegations and the concluded California Litigation. Plaintiff's only allegation that even mentions the Commonwealth of Pennsylvania is in paragraph 2 of the Complaint, which is the paragraph alleging venue is proper in the EDPA. The paragraph

9

states in relevant part:

> ". . . a substantial part of this case concerns retaliation against protected activity Plaintiff engaged in from Eastern Pennsylvania, namely filing civil process 06-cv-3338 in the California central district (a diversity case involving PA/DC/CA Districts). Pursuant to 28 U.S.C. §1391(b)(3), venue in Eastern Pennsylvania is appropriate because Defendants have purposefully engaged in fraudulent an or oppressive contacts with Plaintiff while he was resident in Eastern Pennsylvania."

(Complaint ¶2). The complaint fails to identify the alleged protected activity.

To support Counts I through V, plaintiff states that since the time of the USC dispute, he has been stalked by John Doe #1 who allegedly conveyed the USC incident to someone at the University of Arizona, contributing to his dismissal from that program. (Complaint, p. 2, and ¶¶12) He then alleges, that while at MHMH, plaintiff was "witnessed to have 'nervous breakdown' characteristics and 'incapacitating anxiety'" and was removed as a doctor and was "hazed" for six months. (Complaint, ¶15) Plaintiff alleges that a defendant in the New Hampshire Litigation told him he would be dismissed from his MHMH residency because of the California dispute. (Complaint, ¶15)

The only allegation against Dr. Kim, who was dismissed from the New Hampshire litigation, is that plaintiff requested Dr. Kim have plaintiff's Dartmouth e-mails preserved and that Dr. Kim failed to conduct an investigation of "abuse and fraud." He also alleges Dr. Kim knew one of the defendants in the California

10

Litigation.    (Complaint, ¶¶19-21, ¶¶15-17, 24e)    Similar allegations were part of the second complaint in the New Hampshire Litigation, from which Dr. Kim was dismissed.  Plaintiff's omits from his third complaint these allegations against Dr. Kim as Dr. Kim was dismissed.

Plaintiff alleges Ms. Peahl, Dartmouth's lawyer in the New Hampshire Litigation, engaged in improper and unethical litigation practices and threatened Rule 11 sanctions against plaintiff's former lawyers.  These complaints can all be raised in the New Hampshire Litigation and the District of New Hampshire has made no negative findings about Ms. Peahl's conduct in that New Hampshire case, despite plaintiff's allegations here. (Complaint, ¶¶23-24).

The only connection that plaintiff's allegations have to the Commonwealth of Pennsylvania is that plaintiff appears to reside in Pennsylvania.  His "substantive" allegations have nothing to do with this Commonwealth.

## III. ARGUMENT

### A.    Standard of Review

Rule 12(b)(2) requires that a court dismiss the claims against a defendant if the court lacks personal jurisdiction.

> In deciding a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), the allegations of the complaint are taken as true. However, once a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits, or competent evidence, sufficient contacts with the forum state to establish personal jurisdiction. See _Dayhoff_

Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir.1996), cert. denied, 519 U.S. 1028, 117 S.Ct. 583, 136 L.Ed.2d 513 (1996)). The plaintiff must establish those contacts with reasonable particularity. See Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir.1996)

Corrales Martin v. Clemson Univ., CIV.A.07-536, 2007 WL 4531028

(E.D. Pa. Dec. 20, 2007) (citations in original).

> **B.   This Court Should Dismiss this Complaint Because It Lacks Personal Jurisdiction Over Dartmouth, Dr. Kim, and Ms. Peahl**

This Court must decide whether it has personal jurisdiction over the Dartmouth Defendants. Pennsylvania's long-arm statute permits courts to exercise personal jurisdiction over non-resident defendants to the extent the Constitution allows.

> Federal Rule of Civil Procedure 4(e) allows a district court to assert personal jurisdiction over a non-resident to the extent allowed by the law of the state in which it sits. See Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir.1984). Pennsylvania's long-arm statute provides that a court may exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons.Stat. Ann. § 5322(b)

Corrales, *4 (citations and quotations in original).

This Court simply does not have personal jurisdiction over any of the Dartmouth Defendants--Dartmouth, Dr. Kim, and Ms. Peahl.

> Due process requires that the defendant have minimum contacts with the forum state, and that the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. Minimum contacts must have a basis in some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and

12

> protections of its laws. When determining whether
> personal jurisdiction exists, the court must
> resolve the question based on the circumstances
> that the particular case presents.

Id., *4 (internal citations and quotations omitted).

The Court can exercise jurisdiction over a defendant if it has either general or specific personal jurisdiction over a defendant.

> A court may exercise personal jurisdiction based on
> a defendant's general or specific contacts with the
> forum. General and specific jurisdiction are
> analytically distinct categories, not two points on
> a sliding scale.

Id., *4 (internal quotation and citation omitted).

None of the Dartmouth Defendants has the requisite minimum contacts because they do not purposefully avail themselves of the privilege of conducting activities within Pennsylvania to the degree necessary to confer jurisdiction.

### 1. The Court Lacks General Jurisdiction Over Dartmouth, Dr. Kim, and Ms. Peahl

"General jurisdiction" is based upon the defendant's "continuous and systematic contacts" with the forum, which subjects that defendant to a lawsuit in the forum state. When evaluating contacts with a forum, a court should look to a party's "purposeful and extensive availment" of the forum. Id., *5 (quotations in original; internal citation omitted) In Gehling v. St. George's Sch. Of Med., 773 F.2d 539 (3d Cir. 1985), the Third Circuit made clear that the plaintiff bears the burden of establishing the defendant's contacts with the forum state:

13

General jurisdiction exists when the Plaintiff demonstrates that in other respects (other than contacts related to the claim itself) the defendant has maintained 'continuous and substantial' forum affiliations.

Id., 541.

Plaintiff must demonstrate, with reasonable particularity, the Dartmouth Defendants' continuous and systematic contacts with Pennsylvania. He has not and cannot do so.

The only Dartmouth Defendant that has any even plausibly meaningful contacts with Pennsylvania is Dartmouth itself. The Third Circuit and this District have well developed case law regarding whether a defendant university outside Pennsylvania is subject to the general jurisdiction here.

In the leading Gehling case, the Third Circuit held that a Caribbean medical school, St. George's School of Medicine, did not have sufficient contacts with Pennsylvania to subject it to general jurisdiction for claims including negligence, intentional infliction of emotional distress, and breach of contract claims resulting from a Pennsylvania resident student's death. The court concluded there was no jurisdiction notwithstanding that St. George's (i) advertised in national newspapers that circulated in Pennsylvania, (ii) admitted and enrolled students from Pennsylvania, (iii) sent representatives to Pennsylvania as part of a "media swing" to raise the school's profile in Pennsylvania, and (iv) entered into an agreement with a college in Pennsylvania

14

to establish a joint international program to combine pre-med studies in Pennsylvania with the medical school in Grenada. Id., 541-542.

The Third Circuit made clear that its enrollment of Pennsylvania students or receipt of tuition dollars from those students, could not support the exercise of jurisdiction over a non-Pennsylvania school:

> [T]he fact that some of St. George's students are Pennsylvania residents does not signify a relevant business contact. Advanced educational institutions typically draw their student body from numerous states, and appellants' theory would subject them to suit on non-forum related claims in every state where a member of the student body resides. Thus, the fact that residents of the state apply and are accepted for admission to St. George's is of no moment. For the same reason, the fact that St. George's may be said to derive some percentage of its revenues from Pennsylvania residents in return for services provided in Grenada does not subject it to *in personam* jurisdiction.

Id., 542-43 (citations omitted).

Following this case, District Judges in this District have refused to exercise personal jurisdiction over a number of non-Pennsylvania institutions of higher education.

In Gallant v. Trustees of Columbia Univ., 11 F.Supp.2d 638 (E.D.Pa. 2000), this Court refused to exercise jurisdiction over Columbia University when claims were brought against it by the estate of a Pennsylvania resident who died under the care of a doctor employed by Columbia. The court rejected jurisdiction notwithstanding:

1.  Its student body includes Pennsylvania residents;

2.  It filed collection actions in the Commonwealth's Common Pleas Courts;

3.  First Union National Bank holds at least four Columbia University trust accounts in Philadelphia;

4.  Columbia professors and other employees participate in conferences, visiting professorships, and other academic activities in Pennsylvania;

5.  It participates in revenue generating athletic events in Pennsylvania; and

6.  It is a party to research contracts or agreements to conduct clinical trials with at least six pharmaceutical companies conducting business in Philadelphia.

Id., 641-644.   In analyzing Columbia University's contacts with the Commonwealth, this court noted:

> [T]hese contacts are the result of Columbia's general participation in the type of interstate activity in which any nationally prominent educational institution would engage and the [plaintiff had] not produced any evidence that suggests that Columbia or its employees singled out Pennsylvania as opposed to generally participating in interstate academic activities that may take place in the Commonwealth.

Id., 641-642.

In Kendall v. Trustees of Amherst College, 2007 WL 172396 (E.D.Pa. Jan.18, 2007), this court refused to exercise jurisdiction over Amherst College in a personal injury action, despite Amherst's:

1.  Utilization of banks and financial depositories within Pennsylvania for the purpose of collecting payments for tuition and room and board for current students;

16

2.  Designation of "class agents" in Pennsylvania to coordinate alumni affairs of Amherst graduates;

3.  Solicitation of monetary gifts from alumni in Pennsylvania; and

4.  Sending admissions employees and mailing to Pennsylvania high schools and their students to recruit prospective college students.

Id., 16-17.  The court found, as with Columbia University and St. George's, that these ordinary contacts that all national colleges and universities have in every state were not continuous or substantial enough to establish general jurisdiction. Id.

Finally, in Corrales Martin v. Clemson University, 2007 WL 4531028 (E.D.Pa. Dec.20, 2007), this court refused to exercise general jurisdiction over Clemson University in a discrimination case brought by a former employee. The following contacts were not enough to exercise jurisdiction over Clemson:

1.  Recruited students at college fairs in Pennsylvania;

2.  Enrolled Pennsylvania students;

3.  Targeted and recruited Pennsylvania high school student-athletes;

4.  Solicited and received donations from Pennsylvania residents;

5.  Licensed its trademarks to Pennsylvania residents;

6.  Purchased services and good from Pennsylvania;

7.  Regularly contracted with Pennsylvania entities;

8.  Subcontracted to provide services to Pennsylvania entities;

17

9.   Its faculty, students, staff and administrators regularly participated in events in Pennsylvania; and

10.  Its faculty have engaged in private consulting activities in Pennsylvania.

Id.,*6.

There is one Eastern District decision in which this Court exercised jurisdiction over a national university based outside the Commonwealth.  In Duchesneau v. Cornell University, 2009 WL 3152125 (E.D.Pa. Sept.30, 2009), this Court held that Cornell University was subject to jurisdiction in Pennsylvania because, unlike Dartmouth, Columbia, Amherst, St. Geroge's, and Clemson, Cornell registered with the Pennsylvania Secretary of State and obtained a license to do business in Pennsylvania, operated a 1300 square foot Mid-Atlantic Regional Office in Pennsylvania for 45 years, has a Pennsylvania address, telephone lines, fax line, computers, employs full and part-time Cornell staff in its Pennsylvania office, pays Pennsylvania state and local taxes for its Pennsylvania employees, maintains a Pennsylvania Tax ID number, pays Pennsylvania workers compensation insurance, has a commercial lease with a Pennsylvania landlord and pays substantial rent, gas and electric bills to Pennsylvania utilities.  Id., *4-*5

Columbia, Clemson, St. George's, and Amherst are all in the same position as Dartmouth in this case — the activities that they conduct in the Commonwealth of Pennsylvania are the same that

all national colleges and universities do and, as a result, are not substantial enough to subject Dartmouth College to the general jurisdiction of this Court.

To reiterate, Dartmouth's contacts with Pennsylvania, none of which have anything to do with this case, are: maintaining a website accessible in Pennsylvania (O'Leary Declaration, ¶16), admitting students from Pennsylvania and receiving donations from former students and residents of Pennsylvania (O'Leary Declaration, ¶¶16,21,24), conducting targeted online advertising aimed at certain students in Pennsylvania based on student test scores (O'Leary Declaration, ¶20), participating in student and student/athlete recruiting in Pennsylvania (O'Leary Declaration, ¶22), having its faculty and employees occasionally participate in conferences and visiting professorships in Pennsylvania (O'Leary Declaration, ¶23), and subcontracting with research institutions in Pennsylvania, and spending less than .25% of its overall sponsored research expenditure in Pennsylvania (O'Leary Declaration, ¶27).

Dartmouth's contacts are not systematic and continuous and are akin to the contacts identified in Gehling, Gallant, Coralles, and Kendall, above, in which this Court refused to exercise general personal jurisdiction over similar institutions of higher education that do not educate students or operate offices in this Commonwealth.

If this Court were to exercise general jurisdiction over

Dartmouth under these facts, every national institution of higher education would be subject to jurisdiction in this Commonwealth, because Pennsylvania students attend virtually every national college and university in the country.  That is simply not the law in the Third Circuit or the Eastern District of Pennsylvania. See Gehling, supra, 773 F.2d at p. 541.

Putting aside the fact that plaintiff's claims against Dr. Kim and Ms. Peahl are preposterous, they clearly have no connection whatsoever to Pennsylvania and this Court could not constitutionally exercise its general jurisdiction over them.  See Marten v. Goodwin, 499 F.3d 290 (3d Cir.2007) affirming CIV.A.03-6734, 2005 WL 3307084 (E.D.Pa. Dec. 5, 2005) Tucker, J. (affirming district court's conclusion that personal jurisdiction over individuals, and university defendants, failed where individuals, a professor, an instructor, and a director of on-line University of Kansas pharmacy program, lacked contacts with Pennsylvania).

### 2. The Court Lacks Specific Jurisdiction Over Dartmouth, Dr. Kim, and Ms. Peahl

When determining whether a court may constitutionally exercise specific jurisdiction over a defendant, the Court must determine that the defendant directed its activities to Pennsylvania, the litigation arose from those activities, and if it makes both of these findings, that justice requires the exercise of jurisdiction in the particular case.  In setting forth its explanation of the test for specific jurisdiction, this Court stated in Corrales v. Clemson Univ., CIV.A.07-536_2007 WL 4531028

(E.D.Pa. Dec. 20, 2007), infra:

> The Third Circuit recently explained the three-part analysis for specific jurisdiction. First, the defendant must have purposefully directed [its] activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice.

Id., *7 (internal citations omitted).

None of plaintiff's purported causes of action in the complaint involve Pennsylvania nor does plaintiff allege that any defendant did any act in this Commonwealth relating to plaintiff.

As stated above, the only paragraph in the complaint that even mentions Pennsylvania is paragraph 2, which states in relevant part, "a substantial part of the this case concerns retaliation against protected activity plaintiff engage in from Eastern Pennsylvania." (Complaint ¶2). Plaintiff does not and cannot allege that any of the Dartmouth Defendants did anything in Pennsylvania to discharge him from his New Hampshire residency or in connection with the New Hampshire Litigation over the residency program discharge.

Even if, as plaintiff claims, he is suffering harm in Pennsylvania, the alleged acts that caused the harm did not occur in Pennsylvania and, therefore, this Court cannot exercise specific jurisdiction. See Corrales, 2007 WL 4531028, *4, _citing and quoting from_ Chardon v. Fernandez, 454 U.S. 6, 7 (1981) ("the proper focus is on the time of the discriminatory act, not the

21

point at which the consequences of the act become painful.")

Not only would it be improper for this Court to exercise either general or specific jurisdiction against the Dartmouth Defendants, or any of the defendants for that matter, but this Court should also not waste its time and resources dealing with this repetitive plaintiff and the burdensome litigation he files.[8]

---

[8]    Nothing alleged in plaintiff's complaint constitutes a statement of claim upon which relief may be granted and the claims should be dismissed under Rule 12(b)6).  This is but another ground upon which this Court should dismiss this case.  Plaintiff fails to state any facts sufficiently alleging and of his five counts and lacks sufficient detail to put Defendants on notice of the claims so they can defend adequately.

A claim for civil conspiracy under Pennsylvania law requires that the plaintiff plead facts of:  "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage."  Bioquell, Inc. v. Feinstein, Civ.A. 10-2205, 2010 WL 4751709, *8 (Ed.Pa. Nov. 23, 2010).  Plaintiff fails to state a claim under Pennsylvania law and under New Hampshire law as well.  See also Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47, 534 A.2d 706, 709 (1987).

To plead a claim of intentional infliction of emotional distress, the complaint must allege (1) extreme and outrageous conduct, (2) conduct that is intentional or reckless, and (3) conduct which has caused severe emotional distress.  Brown v. St. Luke's Hospital, 816 F.Supp, 342 at 345 (E.D.Pa. 1993) (citation omitted)  See also, Konefal v. Hollis/Brookline Sch. Dist., 143 N.H. 256, 260-261 (1998).  Plaintiff fails to sufficiently plead under both jurisdictions.

Stating a claim for breach of contract under Pennsylvania or New Hampshire law, requires plaintiff must prove, (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages.  Hernandez v. Ashley Furniture Indus., Inc., CIV.A. 10-5459, 2013 WL 2245894 (E.D. Pa. May 22, 2013)(citation omitted).  See also, Tessier v. Rockefeller, 162 N.H. 324, 338-39 (2011)  There is no contract between plaintiff and any of the Dartmouth Defendants.

Plaintiff's claim for injunctive relief against Defendant Dartmouth is indescribable.  It is unclear what specific relief is sought.

Neither Pennsylvania nor New Hampshire law allows the recovery of damages in a civil action for obstruction of justice.  See Pelagatti v. Cohen, 536 A.2d 1337, 1341-42 (Pa.Super. 1987)  See also, K.W. Thompson Tool Co., Inc. v. United States, 656 F. Supp. 1077, 1084 (D.N.H. 1987) aff'd, 836 F.2d 721 (1st Cir. 1988)

**C.    In The Alternative, this Court May Transfer This Case To the District Of New Hampshire, Where All Parties Would Be Subject to Personal Jurisdiction and Where Plaintiff Has Already Made the Same Claims**

In the alternative, if this Court decides to keep this duplicative litigation alive, the Court should, in order to better serve the interests of justice, transfer the action to the United States Court of the District of New Hampshire.

> Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed ...

Kendall, *6 (citing 28 U.S.C. § 1631).  There is specific personal jurisdiction and venue against all of the defendants in the District of New Hampshire as Dartmouth's place of business is located there and plaintiff's alleged causes of action occurred in New Hampshire (or California, but certainly not Pennsylvania).  See 28 U.S.C. § 1391(a), (c).  Transfer to the court that is already handling plaintiff's complaints about his dismissal from the New Hampshire residency program will also promote judicial economy, as the court in Kendall stated:

> [n]ormally transfer will be in the interest of justice because dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating.

Kendall at WL 172396 (citations and internal quotations omitted)  See also Gallant, 11 F.Supp.2d 638, 644 (E.D.Pa. 2000) (transfer

is also appropriate where there is improper venue under 28 U.S.C. § 1406(a) and for the convenience of the parties under 28 U.S.C. § 1404(a)). Not only could plaintiff have brought this action in the District of New Hampshire, but he *has* brought most of it there and has entangled that New Hampshire court in, what Judge Freess of the Central District of California characterized plaintiff's litigation style in California as, "two years of wrangling." (Exhibit E, at p. 1)

**IV.  CONCLUSION**

For the foregoing reasons, the Dartmouth Defendants, Dartmouth, Dr. Kim, and Ms. Peahl, respectfully request that this Court dismiss Dr. Jeffrey David Isaacs' complaint against them, with prejudice, or in the alternative, transfer this action to the District of New Hampshire.

Respectfully submitted,


/s/ Neil J. Hamburg
NEIL J. HAMBURG (ID No. 32175)
JODI S. WILENZIK (ID No. 89205)
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590

Attorneys for Defendants
The Trustees of Dartmouth College,
Dr. Jim Yong Kim and
Kathleen C. Peahl, Esquire

Dated:  October 24, 2013

24

**CERTIFICATE OF SERVICE**

I certify that the foregoing Motion To Dismiss has been filed electronically and is now available for viewing and downloading from the Court's Electronic Case Filing System by:

Nicholas M. Donzuso, Esquire
Lewis Brisbois Bisgaard & Smith LLP
One Riverfront Plaza
Suite 350
Newark, NJ 07102

***Counsel for Arizona Board of Regents, University of Arizona Health Sciences Center, and Amy Waer***

I further certify that a copy of the foregoing pleading is being served by regular mail, on the following:

Dr. Jeffrey D. Isaacs
3553 W. Chester Pike, Unit 177
Newtown Square, PA  19073

*Pro se*

Dated: October 24, 2013          /s/ Jodi S. Wilenzik
                                 JODI S. WILENZIK

Exhibits

Exhibit A        New Hampshire Complaint

Exhibit B        New Hampshire Docket

Exhibit C        Copy of first page of plaintiff's ERAS (Electronic
                 Residency Application Service) application

Exhibit D        March 5, 2013, Order dismissing Dr. Kim from the
                 New Hampshire Litigation

Exhibit E        California Order regarding Motion to Enforce
                 Settlement

Exhibit F        California Litigation Docket

Exhibit G        Kevin D. O'Leary Declaration

Exhibit H        Jim Yong Kim Declaration

Exhibit I        Kathleen C. Peahl, Esquire Declaration