1   DR JEFFREY DAVID ISAACS
    3553 W Chester Pike Unit 177
2   Newtown Square, PA 19073
    Telephone: (610) 202-1460
3   jeffrey.isaacs.wg03@wharton.upenn.edu
4

5

6

7

8                   IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF PENNSYLVANIA

10

11

12

13
                                          )    **VERIFIED COMPLAINT**
14   DR JEFFREY DAVID ISAACS                  )
                                          )
15          Plaintiff, *pro se*,              )    Case No. CV-13-5708-PBT
                                          )
16                                        )
            -V-                           )
17                                        )    **AMENDED COMPLAINT**
18   TRUSTEES OF DARTMOUTH COLLEGE;       )    **FOR DAMAGES &**
     ARIZONA BOARD OF REGENTS;            )    **PERMANENT INJUNCTION**
19   DR MARC BERTRAND;                    )
     DR JIM YONG KIM;                     )
20   EDWARD KAPLAN;                       )
     NEW HAMPSHIRE BOARD OF MEDICINE;     )
21   DR AMY WAER;                         )
22   MARY HITCHCOCK MEMORIAL HOSPITAL;    )
     UNIV.ARIZONA HEALTH SCIENCES CENTER; )
23   and JOHN DOE #1 & #2,                )
24          Defendants.                   )
                                          )
25   _____  )    **DEMAND FOR JURY TRIAL**

26

27

28

1

## I. STATEMENT OF THE CLAIM

2  Upon graduating from a Caribbean medical school in 2010, Plaintiff made residency

3  applications to various hospitals across the United States, via the nationwide ERAS

4  application system. He was accepted and enrolled as a surgeon at Defendant University of

5  Arizona Health Sciences Center in 2010. In 2011, he accepted a position as a psychiatry

6  intern with Defendants Dartmouth College/Mary Hitchcock.

7

8  The Plaintiff completed his ERAS applications for each residency position from

9  Pennsylvania, where he has been a resident since birth. After a nationwide National

10  Residency Matching Program "match," the Plaintiff's conditional ERAS/NRMP match

11  lead to a subsequent, formal employment application process. Both U. Arizona and

12  Dartmouth sent an Application for Employment new hire packet to the Plaintiff's

13  residence in Pennsylvania (in 2010 and 2011, respectively). Likewise, a training license

14  application for the New Hampshire Board of Medicine was sent to the Plaintiff in

15  Pennsylvania in March 2011, which he completed and returned to them.

16

17  Since 2012, the Plaintiff has been subjected to proceedings in a growing number of venues

18  (at least a half-dozen), falsely alleging that he committed intentional fraud in Pennsylvania

19  by omitting a 2006 legal dispute with a California university. The ERAS administrator,

20  the American Academy of Medical Colleges (AAMC), first investigated this matter in

21  April 2012. AAMC processes nearly all 20,000 medical residency positions nationally,

22  and carries authority over ERAS discrepancy investigations. ERAS/AAMC exonerated

23  the Plaintiff and expunged the investigation, within a matter of six weeks. Next, the New

24  Hampshire Employment Security ("NHES Unemployment") conducted an initial hearing

25  in April 2012, and an appeal hearing (at Defendants request) in June 2012, and both

26  hearings determined that the Plaintiff did not conduct intentional fraud on his residency

27  application. Some eighteen months later, after Plaintiff demanded Dartmouth's criminal

28  allegations be investigated the New Hampshire Board of Medicine (the "NH Board"), the

1   NH Board has ordered the Plaintiff to drive from Pennsylvania to NH for a yet another

2   hearing on the ERAS matter, scheduled for February 2014. Similarly, after Plaintiff filed

3   criminal complaints against them, the Defendant Dartmouth College/Mary Hitchcock

4   terminated the Plaintiff from their residency program, alleging Plaintiff committed fraud

5   in Pennsylvania when he completed the ERAS application. Dartmouth College mailed a

6   termination letter to Plaintiff, in Pennsylvania, offering a fair hearing on the matter. Later,

7   Defendant Kaplan emailed Plaintiff, in Pennsylvania, rescinding the Fair Hearing offer. In

8   sum, Plaintiff's nationwide residency applications have become a growing cause of

9   retaliatory proceedings against him.

10

11   Despite achieving US Medical Board scores higher than the average neurosurgeon, the

12   Plaintiff has been wrongly vilified and effectively barred from U.S. medical training for

13   the past decade. These actions left Plaintiff without a career, and with serious

14   neuropsychiatric and cardiovascular findings during medical studies conducted at the

15   University of Pennsylvania. In particular, the Plaintiff has been deprived matriculation in

16   a federally funded M.D. program, a federally-funded surgical residency in Arizona, and

17   deprived of a federally-funded psychiatry residency and M.P.H. degree program with

18   Defendant Trustees of Dartmouth College. This case, in summary, asserts claims of civil

19   obstruction of justice and conspiracy. Despite the fact that Plaintiff's California medical

20   school records were sealed, acquitted, and discharged, Defendants have acted with

21   unconscionable disregard for the harm inflicted upon the Plaintiff. Plaintiff and his family

22   have twice this year gone to the Philadelphia FBI bureau office, seeking criminal charges

23   against the individuals behind the conspiracy, fraud, assault, and evidence destruction.

24

25   **II.  JURISDICTION AND VENUE**

26   1.     Jurisdiction is invoked pursuant to 28 U.S.C. § 1332 (diversity of parties in

27   PA/AZ/NH),  28 U.S.C. § 1331 (Plaintiff's right of participation in a federally funded medical

28   training after suing an US federal employee / NIH director),   and 28 U.S.C. § 1343(a)(3)

1    (civil rights, specifically, right to not be retaliated against for engaging in federal litigation

2    against an NIH director and medical school receiving federal funds). This case assigns John

3    Doe #1 and #2 as defendants. It is unknown to Plaintiff who initiated the alleged conspiracy.

4    All named defendants, nonetheless, had minimum contacts with Plaintiff in Pennsylvania.

5          2.      Venue is proper in the Eastern District of Pennsylvania according to 28 U.S.C.

6    § 1391(b)(2) and  28 U.S.C. § 1391(b)(3). Pursuant to 28 U.S.C. § 1391(b)(2), a substantial

7    part of this case centers upon Plaintiff's actions in Pennsylvania, namely, his applications for

8    residency positions with the Defendants. Moreover, all Defendants entered into substantial

9    contacts by transmitting applications, contracts, fair hearing offers, and other important

10   documents to the Plaintiff in Pennsylvania, then later, holding hearings and making

11   allegations concerning Plaintiff's actions in Pennsylvania. Furthermore, this entire claim

12   exists because Defendants have retaliated against protected activity Plaintiff engaged in from

13   Eastern Pennsylvania, namely filing civil process 06-CV-3338 in the California central

14   district (a diversity case involving PA/DC/CA districts).  Pursuant to 28 U.S.C. § 1391(b)(3),

15   venue in Eastern Pennsylvania is appropriate because Defendants have purposefully engaged

16   in fraudulent, oppressive, and/or unconscionable contacts  with Plaintiff while he was resident

17   in Eastern Pennsylvania. Pennsylvania is the only common, overlapping jurisdiction in which

18   all Defendants have entered into minimal contacts with Plaintiff.  Venue in PAED will

19   minimize necessity for ancillary actions in other states (i.e. Arizona, California, and Vermont)

20   and allow a single, consolidated view of what caused Plaintiff's injuries.

21

22                            **III.  THE PARTIES**

23   **A.      Plaintiff**

24        3.      Plaintiff DR JEFFREY DAVID ISAACS is a citizen of the Commonwealth of

25   Pennsylvania. Plaintiff completed various employment application documents while resident in the

26   Commonwealth of Pennsylvania, which later became the subject of retaliatory fraud allegations made

27   by each of the Defendants.

28

**B.     Defendants**

4.      TRUSTEES OF DARTMOUTH COLLEGE, MARY HITCHCOCK MEMORIAL HOSPITAL are organizations in New Hampshire. EDWARD KAPLAN and MARC BERTRAND are individuals resident in New Hampshire. Defendant JIM YONG KIM was resident in New Hampshire as president of Dartmouth College at the time of the alleged facts, but is now resident in Washington DC as president of the World Bank. The NEW HAMPSHIRE BOARD OF MEDICINE is an organization in New Hampshire. To invoke jurisdiction for the permanent injunction sought, the NH Board of Medicine is defined as its constituents, collectively, in their official capacity. No claims for damages are applicable against the Board, due to statutory immunity.

5.      ARIZONA BOARD OF REGENTS and UNIVERSITY OF ARIZONA HEALTH SCIENCES CENTER are organizations located in the State of Arizona. Dr AMY WAER is an individual resident in the State of Arizona.

6.      Plaintiff is not aware of the true names and/or capacities sued herein as JOHN DOE #1 and #2, and therefore sues said defendants by such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes and therefore alleges that each of the Doe defendants is legally responsible and liable for the injuries and damages hereinafter set forth. Plaintiff will ask leave to amend this complaint to insert further charging allegations when such facts are ascertained.

7.      Each of the defendants, including defendants JOHN DOE #1 & #2, caused and is responsible for the below-described unlawful conduct and resulting injuries by, among other things, personally participating in the unlawful conduct or acting jointly or conspiring with others who did so; by authorizing, acquiescing in or setting in motion policies, plans or actions that led to the unlawful conduct.

### IV.     FACTS APPLICABLE TO ALL CAUSES OF ACTION

8.      Plaintiff commenced federal litigation in 2006 against a California medical school, its Dean, Assistant Dean of Student Affairs, a university general counsel, and an NIH director (the "individual defendants"). Plaintiff alleged he was inappropriately disciplined as a result of favoritism

1   by the Deans towards his classmate, the daughter of a renowned NIH director who oversaw

2   disbursement of $1 billion annually in tax payer funds, some of which were directed to the California

3   university. Both Deans and the NIH director resigned from their respective job appointment within a

4   year of the 2006 lawsuit filing.

5          9.     In 2006, the LAPD declined the California school's attempts to press charges against

6   the Plaintiff; the allegations lead to Plaintiff suffering eight years of subsequent litigation with no less

7   than eight law firms/legal teams persecuting him over a trivial dispute with a classmate. In 2007, in

8   exchange for dismissal of claims against the individual defendants, the California school agreed to

9   seal any and all FERPA-governed disciplinary records pertaining to Plaintiff (Exhibit A). In 2008, the

10  entire lawsuit was settled in exchange for the California school issuing a broad acquittal of Plaintiff

11  and discharging prior enrollment matriculation contracts (Exhibit B). The "acquittal, release and

12  discharge" of "promises, agreements, and controversies" effectively annulled Plaintiff's disputed

13  enrollment in California.

14        10.    Plaintiff graduated from a foreign medical school in 2010. His basic sciences studies

15  in the Caribbean lead to him receiving, in 2008, a US Medical Licensing board score (USMLE 1)

16  three points higher than the average neurosurgeon.  In 2009-2010, he completed clerkships in

17  neurosurgery at Mount Sinai (NY), ER and orthopedic surgery clerkships at the Cleveland Clinic, and

18  core medical rotations at the largest medical school in London (SGUL). Plaintiff received above

19  average or superior reviews and graduated without incident in four years time.

20        11.    Upon graduating from the Caribbean medical school in 2010, Plaintiff made numerous

21  residency applications to various hospitals across the United States, via the nationwide ERAS

22  application system. The Plaintiff's applications were made from Pennsylvania, as a life-long resident

23  of Pennsylvania.

24        12.    The Plaintiff was accepted and enrolled as a surgeon at Defendant University of

25  Arizona Health Sciences Center in 2010.

26        13.    It is alleged that John Doe #1 communicated with the University of Arizona and

27  informed Arizona of Plaintiff's prior California disciplinary allegations, in violation of two settlement

28  agreements and/or FERPA.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14.     Plaintiff was told on his second day at Arizona that he was not qualified for the residency. Plaintiff, based upon his anecdotal knowledge of approximately 300 members of his graduating medical school class, never heard of an intern being told on day #2 that he was not qualified to remain in the program.

15.     Based on their knowledge of the California litigation, Arizona already had effectively decided to terminate Plaintiff, at the point when they encouraged and caused him to drive from Pennsylvania to Arizona to begin a residency. This is because Plaintiff "matched" in March 2010, but started work in July 2010, at which time Arizona already was in possession of "leaked" FERPA records.

16.     Within six weeks of arriving in Arizona, Plaintiff resigned, suspecting that U. Arizona had communicated with John Doe #1 . It is alleged that Arizona dissented against Plaintiff's prior litigation but understood they could not legally discuss the issue with Plaintiff, without revealing John Doe #1. Plaintiff noticed Arizona of a lawsuit, but without evidence, attempted to put the matter behind him and enrolled in another residency at Dartmouth College. It is hereby asserted that Arizona constructively terminated the Plaintiff, and did so by making fraudulent and excessive criticisms against his performance as a surgeon trainee.

17.     Plaintiff reapplied, from Pennsylvania, to Defendants Dartmouth College/Mary Hitchcock Memorial Hospital. He accepted a position as a psychiatry intern at Defendant Dartmouth College/Mary Hitchcock. As part of the application process, Plaintiff submitted an application for a training license to the New Hampshire Board of Medicine.

18.     It is alleged that Dartmouth had already effectively decided to terminate Plaintiff, prior to the point they encouraged and caused him to move from Pennsylvania to New Hampshire to begin his residency.

19.     During his first week at Dartmouth, Plaintiff was witnessed to have "nervous breakdown" characteristics and "incapacitating anxiety," necessitating his removal as a doctor on the inpatient medical M2 ward. Plaintiff believes, on his first two days of work on M2, he was asked to perform two unnecessary prostate exams, and was generally hazed for the next six months. Plaintiff filed lawsuit (cv-12-40-JL USDC-NH) against Dartmouth in January 2012 for hazing , fraud, and

1   medical injuries caused by abuse. This PAED lawsuit concerns Plaintiff's application in Pennsylvania

2   and Defendants' inter-state conspiracy; in contrast, the NHD lawsuit is limited solely to abuse

3   Plaintiff suffered in New Hampshire.

4         20. In February 2012, Defendant Kaplan informed Plaintiff that he would be dismissed from

5   Dartmouth, because of his California dispute – despite the fact it was sealed, annulled/discharged,

6   and acquitted. At that point, Plaintiff finally had some evidence that after almost 7 years, someone

7   was leaking information about California to his residency programs, in violation of the settlement

8   agreements.

9         21.    On January 16, 2012, Plaintiff noticed Defendant Kim of intent to file lawsuit 12-40-

10  JL USDC NH. Plaintiff requested Kim order all emails to be preserved, pursuant to FRCP 34.

11        22.    On January 19, 2012, to spite Plaintiff and to cover assault and abuse charges,

12  Plaintiff's hospital email account was deleted, in violation of Dartmouth's own email policy and

13  FRCP 34.

14        23.    The deleted emails contained evidence of abuse and fraud. Plaintiff also believes

15  additional evidence of inter-state conspiracy, relevant to claims in this lawsuit, were deleted at that

16  time.

17        24.    Two months later, Plaintiff accused Defendant Kim of inaction regarding his request

18  for investigation of abuse and fraud. A week later, and two days prior to Kim's nomination to

19  President of the World Bank, Plaintiff was terminated from Dartmouth's residency.

20        25.    It is believed Jim Yong Kim previously worked with and knew one of the individual

21  defendants from the California litigation, the NIH director, as the two had ten to fifteen years of

22  overlapping employment within Harvard Medical School's international health faculty. In 2012,

23  Plaintiff offered Kim's counsel the opportunity for him to not be named in this lawsuit, if he could

24  provide an affidavit that he does not know any of the individual defendants. Kim declined.

25        26.    It is alleged John Doe #2 did not want Plaintiff to become a licensed doctor, and

26  communicated with Dartmouth about his prior litigation in California. Plaintiff's program director,

27  Christine Finn, has testified that she learned about the California litigation from her attorney,

28  Defendant Kaplan. As such, John Doe #2 and Defendant Kaplan improperly communicated about the

1  Plaintiff's sealed/discharged educational records, in violation of FERPA and two federal court

2  settlement agreements.

3      27.    In general, Defendants have engaged in improper and unethical litigation practices

4  seeking to subvert justice. Of note, days before Dartmouth's intentional destruction of email

5  evidence,  Plaintiff telephoned Defendant Kim, and his attorney answered and ridiculed, taunted, and

6  harassed plaintiff, including statements such as "I'm sure you do wish you knew what happened."

7      28.    Plaintiff asserted in CV-12-40 that he was the first resident ever to be dismissed from

8  Dartmouth without a fair hearing, and that this was done to discredit the Plaintiff before Defendant

9  Kim's World Bank nomination. After Plaintiff was dismissed,  and after CV-12-40-JL was filed,

10  Plaintiff was offered a "late" post-dismissal fair hearing via a letter mailed to Pennsylvania. For

11  medical reasons, Plaintiff did not feel safe attending the late fair hearing on Dartmouth premises,

12  because he had alleged felony level crimes (evidence destruction, fraud, and unnecessary "hazing"

13  prostate exams) against individuals who would be present in the hearing. Defendant Bertrand denied

14  his request for a fair hearing via video conference, despite the fact Defendants routinely request video

15  conference for depositions and other similar matters.

16      29.    Defendant Bertrand , the Plaintiff's Dean at Dartmouth College, trained with Arizona

17  surgery for approximately 5 years. Bertrand verified Plaintiff's application to Dartmouth, including

18  his disclosure of training at Arizona surgery. It is alleged Bertrand or his appointees conspired with

19  individuals at Arizona surgery. Specifically, Plaintiff was subject to  "coordinated" criticisms from

20  both Dartmouth and Arizona , such as a specific "wound bandage inspection" criticism. Plaintiff's

21  criticisms were not coincidental, and were, in fact, meant to build a case for terminating Plaintiff's

22  US medical training without raising the California issue. As a result, Plaintiff's federal training

23  subsidy has been exhausted by the defendants, and he is left without possibility of becoming a

24  licensed physician in the United States.

25      30.    The Plaintiff has been subjected to proceedings in a growing number of venues falsely

26  alleging that he committed intentional fraud in Pennsylvania by omitting the California 2006 legal

27  dispute from his ERAS application. The ERAS administrator, the American Academy of Medical

28  Colleges (AAMC), first investigated this matter in April 2012. ERAS/AAMC exonerated the Plaintiff

and expunged the investigation, within a matter of six weeks. (See Exhibit C, *letter from Rochelle Campbell expunging ERAS investigation*).

31.    New Hampshire Employment Security ("NHES Unemployment") conducted an initial hearing in April 2012, and an appeal hearing (at Defendants request) in June 2012, and *both hearings determined that the Plaintiff did not conduct intentional fraud on his residency application by omitting California*.

32.    In addition to ERAS and the NHES Unemployment Office, at least four attorneys (Michael Payne, John Skinner, Patrick Rivard, Keith Mathews) have told Plaintiff and issued sworn documents reiterating that the 2006 / 2007 settlements annulled Plaintiff's matriculation at the California university. (Exhibit D, *Affidavit of Michael Payne*).

33.    The Defendant NEW HAMPSHIRE BOARD OF MEDICINE has ordered Plaintiff to drive from Pennsylvania to New Hampshire in February 2014 to "discipline him" for not disclosing the sealed/acquitted California records. The NH Board of Medicine has, moreover, failed to adequately investigate Plaintiff's complaints of the fraud committed by Defendant Bertrand and others at DHMC. Initially, the NH Board (and the NH Attorney General) alleged Plaintiff simply failed to disclose his attendance in California. Over the next 18 months, as Plaintiff demanded the Board investigate criminal activity he was subjected to at Dartmouth, the Board escalated their charges against the Plaintiff. Now, the Board determined – in contrast to eight other individuals determination and the plaint language of the settlements – that the California disciplinary proceedings against Plaintiff, plainly sealed and acquitted, were in fact never sealed or acquitted. The NH Board recently issued a determination that Plaintiff's records from California were not sealed and thereby not annulled, and thus Plaintiff should be disciplined in February 2014. One member of the NH Board has recused himself on this matter, and it is believed most members of the NH Board have close professional relationships with Defendant Bertrand, whom Plaintiff has made criminal complaints against. In essence, Plaintiff's allegations against physicians at Dartmouth, a major employer and institution of veneration in NH, has lead to him being a scapegoat there.

## V.  CAUSES OF ACTION

1

**CONSPIRACY**

2

(AGAINST ALL DEFENDANTS EXCEPT NEW HAMPSHIRE BOARD OF MEDICINE)

3       34.     Plaintiff realleges and incorporates by reference the allegations of the paragraphs 1

4    through 33 of this complaint as though fully set forth herein.

5       35.     Plaintiff had a right to pursue his chosen career in medicine and participate in

6    Medicare/Medicaid funded US medical training.

7       36.     Defendants , through John Doe #1 and #2,  Kaplan, Bertrand and Waer, transmitted

8    knowledge of acquitted and sealed disciplinary actions, and coordinated false performance criticisms

9    against the Plaintiff, with the intent to cause embarrassment, reputational and career loss to Plaintiff.

10      37.     Defendants knew that retaliating against Plaintiff for a 2006 lawsuit, and/or a 2010

11   notice of intent to sue Arizona, was illegal. Defendants knew that Plaintiff could rightfully disavow

12   knowledge of the sealed , acquitted disciplinary actions, but nonetheless abused him and terminated

13   him from medical training for withholding sealed records.

14      38.     Defendants conspired to "break" Plaintiff and get him to speak about the prior

15   California litigation.

16      39.     Plaintiff has suffered severe medical consequences and career loss as a result of

17   Defendants conspiracy.

18

19

20

**SECOND CAUSE OF ACTION**

21

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

22

(AGAINST ALL DEFENDANTS EXCEPT NEW HAMPSHIRE BOARD OF MEDICINE)

23      40.     Plaintiff realleges and incorporates by reference the allegations of the paragraphs 1

24   through 33 of this complaint as though fully set forth herein.

25      41.     The conduct set forth above was extreme and outrageous and an abuse of the position

26   of Defendants.  Said conduct was intended to cause severe emotional distress, or was done in

27   conscious disregard of the probability of causing such distress.

28

42.     The foregoing conduct did, in fact, cause Plaintiff to suffer extreme emotional distress. As a proximate result of said conduct, Plaintiff suffered embarrassment, humiliation and severe emotional distress.

## THIRD CAUSE OF ACTION

### BREACH OF CONTRACT

(AGAINST DEFENDANT MHMH/DARTMOUTH)

43.     Plaintiff realleges and incorporates by reference paragraphs 1 through 33 of this complaint as though fully set forth herein.

44.     Defendant Mary Hitchcock Memorial Hospital and Trustees of Dartmouth College offered Plaintiff a "late Fair Hearing."

45.     Defendant Mary Hitchcock Memorial Hospital and Trustees of Dartmouth College denied Plaintiff reasonable accommodation of a teleconferenced fair hearing, in light of Plaintiff's medical condition, and general fear, of being in a room with individuals who committed felonious sexual assault, fraud, evidence destruction, and conspiracy against him.

46.     Defendants routinely use teleconferencing and denied this communications medium only to intimidate or inconvenience Plaintiff. As such, the contractual offer for a late fair hearing was not honored in a reasonable fashion.

## FOURTH CAUSE OF ACTION

### CIVIL OBSTRUCTION OF JUSTICE

(AGAINST DARTMOUTH DEFENDANTS )

47.     Plaintiff realleges and incorporates by reference paragraphs 1 through 33 of this complaint as though fully set forth herein.

48.     Defendants intentionally deleted an entire resident physician email account, several days after a Rule 34 issuance.

49.     Defendants raised countless inappropriate objections intended to stall or obstruct or intimidate Plaintiff's prosecution in 12-cv-40.

50.    Defendants deleted other critical emails, beyond Plaintiff's own account, which they already admitted to accidentally deleting. These emails would prove the conspiracy alleged in this lawsuit.

51.    Defendants made false claims of Jim Yong Kim's whereabouts with regards to Summons delivery. Kim assented to Plaintiffs termination, and had relationships with individuals Plaintiff had sued which influenced his actions. Kim failed to investigate any of Plaintiff's allegations, and instead, assented to whistle-blower retaliation.

52.    Defendants filed for an "Apex doctrine protective order" for Jim Yong Kim, despite their knowledge that Kim was relevant involvement and/or negligence in 12-cv-40.

## FIFTH CAUSE OF ACTION

### FOR INJUNCTIVE RELIEF

(AGAINST NEW HAMPSHIRE BOARD OF MEDICINE, TRUSTEES OF DARTMOUTH COLLEGE AND MARY HITCHCOCK MEMORIAL HOSPITAL)

53.    Plaintiff realleges and incorporates by reference paragraphs 1 through 33 of this complaint as though fully set forth herein.

54.    Defendants' wrongful conduct, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to plaintiff as it will seriously jeopardize his chance to become a physician and contribute to ongoing medical complications from stress and abuse.

55.    Plaintiff is therefore entitled to permanent injunction ordering Defendants to cease any actions intended to deny Plaintiff of medical training or licensure. Specifically, the NEW HAMPSHIRE BOARD OF MEDICINE shall be enjoined from issuing adverse determinations against the Plaintiff concerning the licensure application he made from Pennsylvania which , pursuant to his Pennsylvania attorney's advice, treated California as a nullity. Dartmouth College and Mary Hitchcock are ordered to retract their letter dismissing Plaintiff for purported fraud committed in Pennsylvania.

1   56.   Plaintiff has no plain, speedy or adequate remedy at law other then injunctive relief so

2   as to prevent further damage to Plaintiff's medical career.

3

4                        **VI.  STATEMENT OF DAMAGES**

5   57.   As a direct and proximate result of the wrongful acts and/or omissions of the

6   Defendants, as set forth above, Plaintiff has sustained the following injuries and damages:

7        a.   Severe emotional distress, humiliation, fear, and embarrassment;

8        b.   Loss of career opportunity; and

9        c.   Past and future medical expenses;

10   WHEREFORE, the Plaintiff prays for damages as follows:

11       a.   That this Court declare the rights of all parties;

12       b.   Compensatory damages, including, but not limited to general and special damages,

13   amounting to $6,900,000 representing no less than four years of lost livelihood, medical damages,

14   and long term or permanent destruction of medical career, and inability to pay $300,000 in student

15   loan debt;

16       c.   Exemplary and punitive damages of $6,000,000;

17       d.   Costs of suit incurred herein;

18       e.   That this Court issue a permanent injunction, all enjoining and restraining Defendants,

19   and each of them, retracting and or mitigating all damages caused by the aforementioned conspiracy

20       f.    All other compensatory, equitable and declaratory relief as this Court deems just.

21

22   Respectfully submitted, this 12th day of November, 2013.

23

24

25

26                           /s/ Jeffrey David Isaacs

27                           JEFFREY DAVID ISAACS

28                           Plaintiff, *pro se*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3553 W Chester Pike Unit 177
Newtown Square, PA 19073
Telephone: (610) 202-1460
jeffrey.isaacs.wg03@wharton.upenn.edu

1

**DEMAND FOR JURY TRIAL**

2

3          Plaintiff hereby demands a jury trial of this action.

4

5

6   DATED:        11/12/13                        /s/ Jeffrey David Isaacs

7                                                JEFFREY DAVID ISAACS

8                                                Plaintiff, *pro se*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

I, Jeffrey David Isaacs, do declare as follows:

That I am the Plaintiff in the above-entitled action.  I have read the foregoing Amended Complaint for Damages, Injunctive Relief; Demand for Jury Trial, and I know its contents.

I declare, therefore, that the matters stated in the foregoing document are true of my own knowledge, except as to matters which are stated on information and belief, and as to those matters, I believe them to be true.  Those matters I aver are what I know to be true.

I declare under penalty of perjury under the law of the United States that the foregoing is true and correct.

Executed on this 12th day of November, 2013.


/s/ Jeffrey David Isaacs

JEFFREY DAVID ISAACS

Plaintiff, *pro se*