## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. JEFFREY DAVID ISAACS, | : |
| | : |
| Plaintiff, | : |
| v. | :     **CIVIL ACTION** |
| | : |
| TRUSTEES OF DARTMOUTH | :     **NO.  13-5708** |
| COLLEGE, ARIZONA BOARD OF | : |
| REGENTS, DR. MARC BERTRAND, DR. | : |
| JIM YONG KIM, EDWARD KAPLAN, | : |
| NEW HAMPSHIRE BOARD OF | : |
| MEDICINE, DR. AMY WAER, MARY | : |
| HITCHCOCK MEMORIAL HOSPITAL, | : |
| UNIVERSITY OF ARIZONA HEALTH | : |
| SCIENCES CENTER, JOHN DOE #1, and | : |
| JOHN DOE #2, | : |
| | : |
| Defendants. | : |

## MEMORANDUM

**Tucker, J.**                                                                                    **August \_\_\_\_, 2014**

      Presently before this Court is Defendants Marc Bertrand, Edward Kaplan, and Mary

Hitchcock Memorial Hospital's Motion to Dismiss for Lack of Jurisdiction (Doc. 24),

Defendants Jim Yong Kim and Trustees of Dartmouth College's Motion to Dismiss for Lack of

Jurisdiction (Doc. 25), Defendants Arizona Board of Regents, University of Arizona Health

Sciences Center, and Amy Waer's Motion to Dismiss (Doc. 26), Defendant Arizona Board of

Regents et al.'s Declaration in Support of Motion to Dismiss (Doc. 27), Defendant Arizona

Board of Regents et al.'s First Affidavit in Support of Motion to Dismiss (Doc. 28), Defendant

Arizona Board of Regents et al.'s Second Affidavit in Support of Motion to Dismiss (Doc. 29),

Defendant Arizona Board of Regents et al.'s Memorandum of Law in Support of Motion to

Dismiss (Doc. 30), Plaintiff David Isaacs' Response in Opposition to Motions to Dismiss by

Dartmouth Defendants (Doc. 32), Plaintiff Isaacs' Default Entry for Emergency Injunction (Doc.

33), Plaintiff Isaacs' Amendment to Response in Opposition to Motions to Dismiss by

Dartmouth Defendants (Doc. 34), Defendant Arizona Board of Regents et al.'s Response to

Plaintiff's Request for Default (Doc. 36), Defendant New Hampshire Board of Medicine's

Objection to Application for Default (Doc. 37), Defendant New Hampshire Board of Medicine's

Motion to Dismiss (Doc. 42), Plaintiff Isaacs' Response in Opposition to Motion to Dismiss and

Request for Appointment of Counsel (Doc. 44), and Plaintiff Isaacs' Addendum to Response to

Motion to Dismiss for Lack of Jurisdiction (Doc. 47).

## I.       FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts alleged by the Plaintiff are as follows.  In 2006, Plaintiff David Isaacs

("Isaacs") commenced federal litigation against the California medical school in which he was

enrolled, its Dean, Assistant Dean of Student Affairs, a university general counsel, and an NIH

director ("the California Defendants"). (Am. Compl. ¶ 8.)  Isaacs filed the suit, alleging he was

inappropriately disciplined as a result of favoritism toward a classmate who was the daughter of

an NIH director. (Id.)  In 2007, in exchange for the dismissal of claims against the individual

defendants, the California medical school agreed to seal any and all disciplinary records of the

Plaintiff governed under the Family Educational Rights and Privacy Act ("FERPA"). (Id. at ¶ 9.)

In 2008, Isaacs' entire lawsuit was settled, and in exchange the California medical school issued

a broad acquittal of Isaacs and annulled Isaacs' enrollment in the school. (Id.)

In 2010, Isaacs graduated from a foreign medical school in the Caribbean. (Id. at ¶¶ 10-

11.)  Upon his graduation, Isaacs made numerous residency applications to various hospitals

across the United States, via the Electronic Residency Application Service ("ERAS"). (Id.)  All

of Isaacs' applications were made from Pennsylvania, where Isaacs was then a resident. (Id.)  In

the same year, Isaacs was accepted and enrolled as a surgical resident at the Defendant

2

University of Arizona Health Sciences Center ("UAHSC"). (Id. at ¶ 12.)  During this period,

Defendant John Doe #1 allegedly communicated with University of Arizona officials and

informed them of Isaacs' prior disciplinary history at the California medical school. (Id. at ¶ 13.)

Isaacs claims that he was told on the second day in his position at University of Arizona that he

was "not qualified for the residency." (Id. at ¶ 14.)

       Based on his suspicions that University of Arizona officials communicated with

Defendant John Doe #1, Isaacs resigned from his surgical residency within six weeks of arriving

in Arizona. (Id. at ¶ 16.)  Following that incident, Isaacs decided to enroll in another residency

program at Dartmouth College. (Id.)  Isaacs alleges that University of Arizona had already

effectively decided to terminate him before he began his residency. (Id. at ¶ 15.)  Isaacs claims

that the University of Arizona "constructively terminated" him by criticizing his performance as

a surgical resident in a fraudulent and excessive manner. (Id. at ¶ 16.)

       Isaacs applied to Defendant Mary Hitchcock Memorial Hospital ("MHMH") at

Dartmouth College and accepted a position as a psychiatry intern. (Id. at ¶ 17.)  As part of his

application, Isaacs also submitted an application for a training license to the New Hampshire

Board of Medicine. (Id.)  Isaacs claims that Dartmouth College also effectively decided to

terminate him before he started his residency. (Id. at ¶ 18.)  During the first week of his

psychiatry internship, Isaacs "was witnessed to have 'nervous breakdown' characteristics and

'incapacitating anxiety,' necessitating his removal as a doctor on the inpatient medical M2

ward." (Id. at ¶ 19.)  Isaacs alleges that on his first two days of work on M2, he was asked to

perform two unnecessary prostate exams and was generally hazed for the next six months. (Id.)

Isaacs then filed a lawsuit against Dartmouth College for hazing, fraud, and medical injuries

caused by abuse. (Id.)  Isaacs claims that in February 2012, Defendant Edward Kaplan ("Mr.

Kaplan") informed Isaacs that he would be dismissed from the Dartmouth College program because of the incident at his California medical school. (Id. at ¶ 20.)

On January 16, 2012, Isaacs informed Defendant Jim Yong Kim ("Dr. Kim") that he intended to file suit against Dartmouth College and requested that Dr. Kim order all emails preserved, pursuant to Federal Rule of Civil Procedure ("FRCP") 34.  (Id. at ¶ 21.)  On January 19, 2012, Isaacs claims his hospital email account was deleted, thereby destroying evidence and violating Dartmouth College's own email policy and FRCP 34. (Id. at ¶¶ 22-23.)  Two months later, Isaacs accused Dr. Kim of inaction regarding a request for an investigation concerning the alleged fraud and abuse. (Id. at ¶ 24.)  A week after this accusation was made, Isaacs was terminated from Dartmouth College's residency program. (Id.)

Isaacs believes that Dr. Kim previously worked with and knew the Defendant NIH Director from the California litigation because the two had ten to fifteen years of overlapping employment within Harvard Medical School's International Health Faculty. (Id. at ¶ 25.)  Isaacs alleges that Defendant John Doe #2 did not want Isaacs to become a licensed doctor and communicated with Mr. Kaplan about his prior California litigation in violation of FERPA and his two federal court settlement agreements. (Id. at ¶ 26.)

Isaacs asserted in his original suit against Dartmouth College that he was the first resident ever to be dismissed from his position without a fair hearing. (Id. at ¶ 28.)  Isaacs was offered a post dismissal hearing, which was to take place on Dartmouth College premises, via a letter mailed to his Pennsylvania residence. (Id.)  Isaacs, however, claims he did not feel safe attending the hearing because he had alleged crimes such as evidence destruction, fraud, and unnecessary hazing against individuals who would have been in attendance. (Id.)  Isaacs argues that Defendant Dr. Marc Bertrand ("Dr. Bertrand") denied Isaacs' request for a fair hearing by video

conference even though Dartmouth College routinely requests video conferences for depositions and other similar matters. (Id.)

Isaacs asserts that Dr. Bertrand trained with the University of Arizona's Department of Surgery for five years. (Id. at ¶ 29.)  Through this connection, Isaacs alleges, Dr. Bertrand or his appointees conspired with individuals at the University of Arizona's Department of Surgery in order to subject Isaacs to coordinated criticism of his work. (Id.)  Isaacs alleges that this was done in order to build a case for terminating him from his U.S. medical training without raising the California issue. (Id.)  As a result, Isaacs claims, his federal training subsidy has been exhausted by the Defendants and he has no further opportunity of becoming a licensed physician in the U.S. (Id.)

Isaacs claims that he has been subjected to numerous claims from a growing number of parties that he committed intentional fraud by omitting his 2006 California legal dispute from his ERAS application.  (Id. at ¶ 30.)  Isaacs states that the ERAS administrator and the American Academy of Medical Colleges first investigated the matter in April of 2012 and exonerated him in a matter of weeks. (Id.)  New Hampshire Employment Security, Isaacs notes, also conducted an initial hearing on this matter in April of 2012 and an appeal hearing in June 2012. (Id. at ¶ 31.)  Both hearings, Isaacs claims, determined that Isaacs did not commit intentional fraud by omitting the California incident from his residency applications. (Id.)

Isaacs further claims that the New Hampshire Board of Medicine ("NHBM"), after months of deliberation, found that the California disciplinary records were never actually sealed or annulled and ordered Isaacs to travel to New Hampshire in February of 2014 to discipline him for not disclosing the California incident. (Id. at ¶ 33.)  Meanwhile, officials at the NHBM

allegedly ignored Isaacs' requests to adequately investigate complaints of fraud committed by

Dr. Bertrand and others at Dartmouth College. (Id.)

On September 30, 2013, Isaacs filed the instant Complaint with the Eastern District of

Pennsylvania.  In response, a number of motions to dismiss the Complaint were filed and on

December 6, 2013, Isaacs filed an Amended Complaint alleging the following:

(1) Conspiracy against all Defendants except the NHBM.  Isaacs alleges that through Dr.
    Amy Waer ("Dr. Waer"), a medical resident at the University of Arizona, along with
    John Doe #1, John Doe #2, Mr. Kaplan, and Dr. Bertrand, Defendants transmitted
    knowledge of Isaacs' sealed disciplinary records and executed coordinated criticism of
    Isaacs' work in order to "break" him and convince him to speak about the prior
    California litigation.  Isaacs claims to have suffered medical consequences and career
    loss as a result of this conspiracy;

(2) Intentional Infliction of Emotional Distress against all Defendants except the NHBM.
    Isaacs claims that the conduct displayed by Defendants was extreme and outrageous,
    done with severe disregard for the probability of causing him emotional distress, and
    effective in that Isaacs did indeed suffer embarrassment, humiliation, and severe
    emotional distress;

(3) Breach of Contract against Defendants MHMH and the Trustees of Dartmouth College
    ("Dartmouth College").  Isaacs asserts that MHMH and Dartmouth College's denial of
    Isaacs' reasonable accommodation to attend his post dismissal hearing through
    teleconferencing was done only to inconvenience and intimidate Isaacs and did not honor
    their contractual offer for a fair hearing in a reasonable fashion;

(4) Civil Obstruction of Justice against all "Dartmouth Defendants," including Dr. Bertrand, Mr. Kaplan, Dr. Kim, Dartmouth College, and MHMH.  Isaacs claims these Defendants intentionally deleted his email account in violation of FRCP 34 and raised countless objections in an effort to obstruct Isaacs' original lawsuit against Dartmouth College;

(5) Injunctive Relief against the NHBM, Dartmouth College, and MHMH. Isaacs argues that unless Defendants are enjoined they will seriously jeopardize his chance to become a physician free from stress and abuse.

In response, Defendants and Isaacs have filed a number of motions.  On December 9, 2013, Dr. Bertrand, Mr. Kaplan, and MHMH filed a Motion to Dismiss Isaacs' Complaint based on a Lack of Personal Jurisdiction pursuant to FRCP 12(b)(2).  Dr. Kim and Dartmouth College soon followed with their own Motion to Dismiss for Lack of Jurisdiction filed on December 12, 2013. Next, Arizona Board of Regents ("ABOR"), UAHSC, and Dr. Waer filed a Motion to Dismiss Isaacs' Complaint on December 16, 2013.  Isaacs filed a Response in Opposition to Motions to Dismiss by Dartmouth Defendants on January 12, 2014, a Default Entry for Emergency Injunction on January 23, 2014, and an Amendment to Response in Opposition to Motions to Dismiss by Dartmouth Defendants a few days later on January 28, 2014.  The NHBM's Motion to Dismiss for Lack of Jurisdiction was filed on March 4, 2014.  Finally, Isaacs filed a Response in Opposition to Motion to Dismiss and Request for Appointment of Counsel on April 18, 2014. Affidavits, declarations, and filings in support and opposition were filed along with these documents.  The Court now addresses the pending motions.

## II.   APPLICABLE STANDARDS OF REVIEW

### A.   *Dismissal Based on Lack of Personal Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(2)*

Motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), like those for failure to state a claim under Rule 12(b)(6), require the court to accept as true the allegations of the pleadings and all reasonable inferences therefrom. FED. R. CIV. P. 12(b)(2); *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *Brown & Brown, Inc. v. Cola*, 745 F.Supp.2d 588, 602 (E.D.Pa. 2010).   However, unlike Rule 12(b)(6), Rule 12(b)(2) does not limit the scope of the court's review to the face of the pleadings.   *See Pinker*, 292 F.3d at 368.   Consideration of affidavits or some other competent evidence submitted by the parties is appropriate and, typically, necessary. *See Patterson by Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990).

Although plaintiffs bear the ultimate burden of proving personal jurisdiction by a preponderance of the evidence, such a showing is unnecessary at the preliminary stages of litigation. *In re Chocolate Confectionary Antitrust Litigation*, 602 F.Supp.2d 538, 556 (M.D.Pa. 2009) (citing *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).   Rather, plaintiffs must merely allege sufficient facts to establish a prima facie case of jurisdiction over the person. *In re Chocolate Confectionary Antitrust Litigation*, 602 F.Supp.2d at 556 (citing *Mellon Bank (E.) PSFS, Nat'l Ass'n*, 960 F.2d at 1223).   Once these allegations are contradicted by an opposing affidavit, however, plaintiffs must present similar evidence in support of personal jurisdiction. *See Patterson by Patterson*, 893 F.2d at 603-04; *In re Chocolate Confectionary Antitrust Litigation*, 602 F.Supp.2d at 556 (citing *Mellon Bank (E.) PSFS, Nat'l Ass'n*, 960 F.2d at 1223).   It is the burden of the plaintiff to prove that the defendant purposefully availed himself of the forum state.   To satisfy this burden, "at no point may the plaintiff rely on

the bare pleadings alone," but rather must sustain its burden "through sworn affidavits or other competent evidence." *Patterson by Patterson*, 893 F.2d at 603–04 (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir.1984)); *In re Fasteners Antitrust Litigation*, Civil Action No. 08-md-1912, 2011 WL 3563989, at *12 (E.D.Pa. Aug. 12, 2011).

**B. *Dismissal Based on Lack of Subject Matter Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(1)***

Motions to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) can be raised at any time during the proceedings. FED. R. CIV. P. 12(h)(3). These motions challenge a federal court's authority to even hear the case and the party asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of litigation. *See Byrne v. Cleveland Clinic*, 684 F.Supp.2d 641, 649 (E.D.Pa. 2010) (citing *Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1045 (3d Cir. 1993)); *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991); *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

Motions pursuant to Rule 12(b)(1) come in two forms: (1) those that attack the Complaint on its face and (2) those that attack some factual element within the Complaint that establishes jurisdiction. *McAllister Towing and Transp. Co., Inc. v. United States*, Civil Action No. 12-2208, 2014 WL 1608484, at *5 (E.D.Pa. Apr. 22, 2014) (citing *Mortensen*, 549 F.2d at 891); *Doe v. Goldstein's Deli*, 82 Fed.Appx. 773, 775 (3d Cir. 2003); *Yuksel v. Northern Am. Power Tech., Inc.,* 805 F.Supp. 310, 311 (E.D.Pa. 1992). Facial attacks do not challenge the Complaint on its factual record but instead contend that the pleadings fail to present an action within the court's jurisdiction. *See e.g., Mortensen*, 549 F.2d at 891; *Jarman v. Capital Blue Cross*, Civil Action No. 1:13-CV-0932, 2014 WL 643613, at *2 (M.D.Pa. Feb. 19, 2014). In that case, as there is no challenge to the factual record, the district court must accept as true the allegations

within the Complaint and is limited to considering only the Complaint and its attached

documents. *See e.g., Mortensen*, 549 F.2d at 891; *Jarman*, 2014 WL 643613, at *2.  On the other

hand, factual attacks call allegations in the Complaint into question and a court may weigh

evidence outside of the pleadings in order to determine its power to hear the case. *See e.g.,*

*Mortensen*, 549 F.2d at 891; *Jarman*, 2014 WL 643613, at *2.

## III.    DISCUSSION

**Personal Jurisdiction Generally (General Personal Jurisdiction And Specific Personal
Jurisdiction)**

A federal court sitting in diversity must conduct a two-step analysis to ascertain whether

personal jurisdiction exists.  First, the court must look to the forum state's long-arm statute to

determine if personal jurisdiction is permitted over the defendant.  Second, the court must

determine whether the exercise of jurisdiction violates the Due Process Clause of the Fourteenth

Amendment. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998); *Kabbaj v.*

*Simpson*, 547 Fed.Appx. 84, 86 (3d Cir. 2013); *Vetrotex Certainteed Corp. v. Consolidated Fiber*

*Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996).  Because Pennsylvania's long-arm statute

permits the exercise of personal jurisdiction to the fullest limits of due process as defined under

the Constitution of the United States, federal law defines the parameters of this Court's *in*

*personam* jurisdiction. *See* 42 PA. CONS. STAT. ANN. § 5322(b) (2014); *Vetrotex Certainteed*

*Corp.*, 75 F.3d at 150.

The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state

defendant only if that defendant has established "minimum contacts" with the forum state and

the exercise of jurisdiction comports with "traditional notions of fair play and substantial

justice." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (citing *International Shoe Co. v.*

*State of Washington., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316

(1945)).  Such minimum contacts are established when there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Remick*, 238 F.3d at 255.

These principles are reflected in the two recognized types of personal jurisdiction: (1) General Jurisdiction, which rests on general contact with the forum, and (2) Specific Jurisdiction, which rests on claim-specific contacts with the forum. *See Remick*, 238 F.3d at 255; *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)).  General Jurisdiction is based on the defendants' "continuous and systematic" contacts with the forum state and "exists even if the plaintiff's cause of action arises from the defendant's non-forum related activities." *Remick*, 238 F.3d at 255 (citing *Vetrotex Certainteed Corp.*, 75 F.3d at 151 n.3).  Specific Jurisdiction, in contrast, is present "only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum." *Remick*, 238 F.3d at 255 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)) (quotation marks omitted).

**Establishing Specific Personal Jurisdiction Using Minimum Contacts Analysis**

Determining whether specific jurisdiction exists requires a fact-intensive, three-part inquiry. *Marten*, 499 F.3d at 296. "First, the defendant must have purposefully directed his activities at the forum." *Id.* (citations and quotations omitted).  "Second, the plaintiff's claim must arise out of or relate to at least one of those specific activities." *Id.* (citations and quotations omitted).  Third, if the prior two requirements are met, "courts may consider additional factors to

ensure that the assertion of jurisdiction otherwise comports with fair play and substantial justice." *Id.* (citations and quotations omitted); *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (citations omitted).

What constitutes purposeful direction or "purposeful availment" varies with the "quality and nature of the defendant's activity." *Burger King Corp.*, 471 U.S. at 474-75 (citing *Hanson*, 357 U.S. at 253). In assessing whether specific personal jurisdiction can be asserted over a defendant, the court must focus on the "relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S.Ct. 1115, 1121-22 (2014) (citations omitted).

The plaintiff or third party actions alone cannot be the only link between the defendant and the forum state. *Walden*, 134 S.Ct. at 1122-23. The defendant's conduct in the forum state must form the connection upon which jurisdiction rests. *Id.* It must also be noted that minimum contacts analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (citations omitted). In determining whether a defendant directs his activities at a forum, the question is whether he has "followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct." *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2789 (2011). The Supreme Court has, for example, upheld jurisdiction over defendants who have "reached out beyond their State into another" by entering contractual relationships that "envisioned continuing and wide-reaching contacts" in the forum state or by circulating magazines in an effort to "deliberately exploit" a market in the forum State. *Walden*, 134 S.Ct. at 1122-23 (citing *Burger King Corp.*, 471 U.S. at 479-80 and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)). Here, physical presence in the forum state is not a prerequisite for jurisdiction to be found, though

"physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Walden*, 134 S.Ct. at 1122-23 (citing *Keeton*, 465 U.S. 773-774).

With regard to the second prong of minimum contacts analysis, the Third Circuit has stated that:

> [T]here is no "specific rule" susceptible to mechanical application in every case . . . But in the course of this necessarily fact-sensitive inquiry, the analysis should hew closely to the reciprocity principle upon which specific jurisdiction rests . . . With each purposeful contact by an out-of-state resident, the forum state's laws will extend certain benefits and impose certain obligations . . . Specific jurisdiction is the cost of enjoying the benefits.

*O'Connor*, 496 F.3d at 323-25 (citations omitted.)  The Third Circuit has also noted that this connection "can be somewhat looser than the tort concept of proximate causation . . . but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable." *Id.*

Once minimum contacts have been established, it must be decided whether the assertion of personal jurisdiction would "comport with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (citing *Burger King Corp.*, 471 U.S. at 476).  Here, the defendant must present a "compelling case that the presence of some other considerations would render the jurisdiction unreasonable" because once minimum contacts have been established jurisdiction is presumptively constitutional. *O'Connor*, 496 F.3d at 324 (citing *Burger King Corp.*, 471 U.S. at 477); *see also Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 207 (3d Cir. 1998) (noting that it is only in "rare" cases in which minimum contacts have been established but jurisdiction is found to be unreasonable).  The Supreme Court has looked to several factors to determine whether fairness enables or strips jurisdiction.  These factors include: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in

obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies . . . and the procedural and substantive interests of other nations." *O'Connor*, 496 F.3d at 324 (citing *Burger King Corp.*, 471 U.S. at 477 and *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 115 (1987)). Among these factors, the burden on the defendant is a "primary concern." *O'Connor*, 496 F.3d at 324.

**Establishing Specific Personal Jurisdiction Using The *Calder* Effects Test**

In addition to the minimum contacts analysis noted above, a separate route to specific personal jurisdiction is available to victims of intentional torts, namely the "effects test" stemming from the Supreme Court's ruling in *Calder v. Jones*, 465 U.S. 783, 788-90 (1984). This ruling stated that intentional torts aimed at a forum state and causing injury within that state can subject a tortfeasor to jurisdiction in that target state. *Id.* The Third Circuit has held that the effects test requires the plaintiff to show: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. *IMO Indus., Inc.*, 155 F.3d at 265-67. With regard to the third prong of the effects test, the Third Circuit has also held that "the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.*

**A. Defendants Mary Hitchcock Memorial Hospital ("MHMH"), Dr. Marc Bertrand ("Dr. Bertrand"), and Mr. Edward Kaplan ("Mr. Kaplan") (collectively, "MHMH Defendants")**

The MHMH Defendants argue that they are all located in the state of New Hampshire and have no connection at all to the Commonwealth of Pennsylvania for the purposes of personal jurisdiction.  As a result of the absence of connections, the MHMH Defendants also argue that this Court lacks general personal jurisdiction over all MHMH Defendants, that there is no specific personal jurisdiction as to the breach of contract claim against MHMH, that this Court lacks specific jurisdiction as to Isaacs' injunctive relief claim, and finally that this Court lacks specific jurisdiction as to intentional tort claims against all MHMH Defendants.  Isaacs makes no effort to counter the MHMH Defendants and has failed to submit any response to oppose the MHMH Defendants' arguments.

**This Court Lacks General Personal Jurisdiction Over All MHMH Defendants**

As noted above, general personal jurisdiction grants courts the ability to hear "any and all claims" against out-of-state defendants "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011) (citing *International Shoe Co.*, 326 U.S. at 317).

Here, it is clear that none of the MHMH Defendants qualify under the "continuous and systematic" standard.  The MHMH Defendants have shown that none of the MHMH Defendants maintain offices, facilities, property, assets, bank accounts or the like in the state of Pennsylvania, nor are any of them licensed to carry out their business or professional duties in Pennsylvania, nor do any of them regularly undertake any activity in Pennsylvania closely

related to their regular business and/or educational activities. (MHMH Defs. Mot. to Dismiss for

Lack of Jurisdiction 23-27; Kaplan Aff. ¶¶ 3-12; Bertrand Aff. ¶¶ 1-6; Arden-ornt Aff. ¶¶ 1-13.)

Defendant MHMH is a teaching hospital located in the state of New Hampshire,

organized under the laws of that state, with its principal place of business located in New

Hampshire as well. (Arden-ornt Aff. ¶¶ 1-13.)  MHMH does not serve patients in the

Pennsylvania area, maintain any programs in the state, nor does it pay taxes in the state. (Id.)

MHMH is not qualified to do business in Pennsylvania and only a small percentage of the

products MHMH uses come from the state. (Id.)  Defendant Dr. Bertrand does not teach or

practice medicine in Pennsylvania or conduct any business in the state, and cannot recall a visit

into the state for any purpose at all in the past ten years. (Bertrand Aff. ¶ 1-6.)  Defendant Mr.

Kaplan is not licensed to practice law in Pennsylvania, does not pay any taxes in the state, has

only visited the state leisurely or professionally a negligible number of times, and does not target

clients from the state of Pennsylvania. (Kaplan Aff. ¶¶ 3-12.)

Courts in this district have noted that in order to sustain general jurisdiction, the plaintiff

must show "significantly more than mere minimum contacts" which are "central to the conduct

of [a defendant's] business." *Lolli v. Parc Management, LLC*, Civil Action No. 3:11-CV-1372,

2012 WL 688475, at *1 (M.D.Pa. Mar. 2, 2012) (citing *Provident Nat. Bank v. California Fed.

Sav. and Loan Ass'n*, 819 F.2d 434, 436-38 (3d Cir. 1987)); *see also, e.g., Clark v. Matsushita

Elec. Indus Co., Ltd.*, 811 F.Supp. 1061, 1067 (M.D.Pa. 1993) (noting general jurisdiction

contacts must be "extensive and pervasive.") (citations omitted); *Henning v. Suarez Corp.*, 713

F.Supp.2d 459, 464 (E.D.Pa. 2010) (stating general jurisdiction contacts must be "perpetual

[and] abiding.").  Here, the MHMH Defendants have scant contacts to the state of Pennsylvania

and do not even approach the level of regular and central contact needed to attain general

personal jurisdiction.  As a result, this Court lacks general personal jurisdiction over all MHMH
Defendants.

**This Court Lacks Specific Personal Jurisdiction Over MHMH As To Breach Of Contract
Claim**

      Isaacs' breach of contract claim is based on his assertion that MHMH and Dartmouth
College offered to provide him with a hearing after his dismissal from his residency but
subsequently refused his demand to conduct the hearing via video conference.  In analyzing
specific jurisdiction in the context of a breach of contract claim, district courts consider "whether
the defendant's contacts with the forum were instrumental in either the formation of the contract
or its breach." *Gen. Elec. Co. v. Deutz AG,* 270 F.3d 144, 150 (3d Cir. 2001) (citations omitted).
By deliberately engaging in significant activities with the forum state or creating "continuing
obligations between [themselves] and residents of the forum," parties may purposely avail
themselves of the forum state. *Burger King Corp.,* 471 U.S. at 475-77.  The mere existence of a
contract, however, "is insufficient to establish minimum contacts." *Metcalfe v. Renaissance
Marine, Inc.,* 566 F.3d, 324, 333 n.7 (3d Cir. 2009). The court evaluates "the totality of the
circumstances, including the location and character of the contract negotiations, the terms of the
contract, and the parties' actual course of dealing." *Remick*, 238 F.3d at 256 (citing *Mellon Bank
(E.) PSFS, Nat. Ass'n*, 960 F.2d at 1223.

      The Court will assume for the sake of argument that MHMH's alleged offer is a contract.
Here, MHMH's contacts with the forum state of Pennsylvania in relation to Isaacs' claim are too
slight to establish the minimum contacts required under the framework established by the
Supreme Court.  The only alleged contact with Pennsylvania related to this claim is MHMH's
letter to Plaintiff offering a hearing to be conducted in New Hampshire.  Through the mailing of
a single letter offering a hearing, MHMH directed its actions at Isaacs himself, not at the forum

of Pennsylvania. *See Walden*, 134 S.Ct. at 1122-23.  The letter's passing though the state of

Pennsylvania is happenstance and based purely on the location of Isaacs at the time of its

mailing.  Moreover, courts of this district have looked skeptically upon jurisdiction derived

principally from letters or communications traveling into the forum state for the purpose of

conflict resolution. *See UMAC, Inc. v. Aqua-Gas AVK Ltd.*, No. Civ.A. 04-4022, 2005 WL

742497, at * 4 (E.D.Pa. Mar. 30, 2005) (citing *Devault of Delaware, Inc. v. Omaha Public

Power District*, 633 F.Supp. 374, 376-78 (E.D.Pa. 1986)); *Lawman Armor Corp v. Simon*, 319

F.Supp.2d 499, 503 (E.D.Pa. 2004).

**This Court Lacks Specific Personal Jurisdiction Over MHMH As To Injunctive Relief Claim**

Though this Court makes no comment on whether, as an initial matter, Injunctive Relief

is a cognizable claim, it finds it has no jurisdiction over the issue.  Isaacs bases his claim on

MHMH's letter dismissing him from the Dartmouth College program and the possible future

harm such sanction would garner. (Am. Compl. ¶ 55.)  MHMH's letter to Isaacs concerning his

residency is not sufficient to create the minimum contacts necessary to create specific

jurisdiction.  There are no facts alleged that show MHMH purposefully availed itself of the

benefits and protections of operating in Pennsylvania with regard to this claim but rather facts

showing MHMH's desire to contact Isaacs, who happened to be residing in the state.  *See e.g.*,

*Remick*, 238 F.3d at 255; *Walden*, 134 S.Ct. at 1122-23.  Additionally, the claim that Isaacs felt

some injury in the state of Pennsylvania due to his termination from MHMH's residency

program cannot alone sustain the contacts needed to establish jurisdiction. *See Corrales Martin

v. Clemson Univ.*, Civil Action No. 07-536, 2007 WL 4531028, at *8 (E.D.Pa. Dec. 20, 2007).

Rather than focusing the analysis on the state in which Isaacs happened to feel the consequences

of MHMH's actions, the proper focal point is New Hampshire, the area in which the allegedly

injurious action was made. *Id.*

**This Court Lacks Specific Personal Jurisdiction Over MHMH Defendants As To All
Remaining Tort Claims**

Isaacs' claims for conspiracy, intentional infliction of emotional distress, and civil

obstruction are based on his allegations of a wide reaching plot to prevent him from a future

career in medicine, the mysterious deletion of Isaacs' email account, and the intentional harm

these actions caused. (Am. Compl. ¶¶ 34-42, 47-52.)  Isaacs has failed to allege any contacts that

MHMH, Dr. Bertrand, or Mr. Kaplan have to the state of Pennsylvania that establish any of the

minimum contacts needed to substantiate specific personal jurisdiction.  He makes no allegations

that would suggest any of the MHMH Defendants' actions availed themselves of the benefits or

protections of the state of Pennsylvania. *See e.g.*, *Remick*, 238 F.3d at 255.  Isaacs makes no

allegations of the MHMH Defendants' physical presence in the forum state, personally or by

proxy, during any of the interactions that led to his dismissal, nor does he aver some connection

to the forum state in the alleged deletion of his email account.  The MHMH Defendants actions

here concern only a relationship with Isaacs and lack the necessary link to the forum of

Pennsylvania needed under minimum contacts analysis. *See Walden*, 134 S.Ct. at 1122-23

(minimum contacts analysis "looks to the defendant's contacts with the forum State itself, not the

defendant's contacts with persons who reside there.").

Furthermore, under the *Calder* effects test, Isaacs' claim against the MHMH Defendants

also fails.  Under *Calder*, specific personal jurisdiction can be attained if "the defendant

expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal

point of the tortious activity." *IMO Indus., Inc.*, 155 F.3d at 265-67  It is also required that the

plaintiff show "that the defendant knew that the plaintiff would suffer the brunt of the harm

caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.*  Isaacs alleges no action on the part of the MHMH Defendants that was specifically aimed at the forum of Pennsylvania as opposed to Isaacs himself.  The Third Circuit has held that specific jurisdiction cannot be exercised over defendants against whom intentional tort claims have been asserted, where the only connection to the forum is the plaintiff's location in the forum. *See e.g.*, *Marten*, 499 F.3d at 299.

### B. Defendants Trustees of Dartmouth College ("Dartmouth College") and Dr. Jim Yong Kim ("Dr. Kim") (collectively, "Dartmouth Defendants")

The Dartmouth Defendants argue that they both are located in the state of New Hampshire and have inadequate contacts to the state of Pennsylvania for jurisdiction purposes. The Dartmouth Defendants also argue that Isaacs' allegations against them have nothing to do with the forum state of Pennsylvania and all of Isaacs' claims against the Dartmouth Defendants should be dismissed or transferred to the appropriate court in the state of New Hampshire.  Isaacs does not challenge the Dartmouth Defendants' claim that this Court lacks general personal jurisdiction, but instead focuses on attaining specific jurisdiction based on letters he received from Dartmouth College while he resided in Pennsylvania. (Pl.'s Resp. in Opp'n to Dartmouth Defs.' Mot. to Dismiss 4.)

**This Court Lacks General Personal Jurisdiction Over All Dartmouth Defendants**

Defendant Dartmouth College has shown that Dartmouth College is an institution of higher learning located in the state of New Hampshire, with its principal place of business in the state of New Hampshire. (O'Leary Decl. ¶¶ 1-3, 9.)  Dartmouth College has shown that it is not authorized to do business in the state of Pennsylvania, it does not maintain an office or facility in Pennsylvania, it has no officers or employees in the state, it maintains no registered agent for

service of process in Pennsylvania, it does not advertise in any Pennsylvania publication, it does not maintain a bank account, post-office box, or phone listing in Pennsylvania, it does not obtain direct revenue from products sold or services rendered in Pennsylvania, it does not own any real property in Pennsylvania, and no activities of Dartmouth College are controlled by any entity located in Pennsylvania. (Id. at ¶¶ 5-20.)  Like all national universities, Dartmouth College maintains some contacts with the state including securities held by a bank headquartered in Pennsylvania, the recruiting of athletes and faculty living in the state, access to its website from within the state, and the admission and enrollment of students coming from the state. (Id. at ¶¶ 13, 16, 21-24).  These *de minimis* contacts, which any national university may have with the state of Pennsylvania, are inadequate to establish general personal jurisdiction in this district.

In *Gehling v. St. George's Sch. of Medicine, Ltd.*, the Third Circuit found that a Caribbean medical school did not have sufficient contacts with Pennsylvania to establish general jurisdiction for tort and breach of contract claims despite the fact that the school advertised in national papers circulated in Pennsylvania, admitted and enrolled students from Pennsylvania, sent representatives to the state as part of a "media swing" to raise the school's profile, and entered into an agreement with a college in Pennsylvania to establish a joint international program to combine pre-medical studies in Pennsylvania with the medical school. 773 F.2d 539, 541-43 (3d Cir 1985).  The court also found that several hundred thousand dollars in tuition flowed from Pennsylvania residents to the school. *Id.*  The court noted:

> [T]he fact that some of St. George's students are Pennsylvania residents does not signify a relevant business contact. Advanced educational institutions typically draw their student body from numerous states, and appellants' theory would subject them to suit on non-forum related claims in every state where a member of the student body resides. Thus, the fact that residents of the state apply and are accepted for admission to St. George's is of no moment.

Id. at 542-43 (citations omitted).  Further, courts in this district have found that activities typical for a national university, such as recruiting forum state students, faculty, and athletes, receiving donations and tuition dollars from forum state residents, and having students, faculty, staff, and administrators participate in conferences in the forum state, should not alone subject an institution to general jurisdiction in the forum state of Pennsylvania. *See Corrales Martin*, 2007 WL 4531028, at *5-7; *Gallant v. Trs. of Columbia Univ. in the City of New York*, 111 F.Supp.2d 638, 641-44 (E.D.Pa. 2000); *Kendell v. Trustees of Amherst College*, Civil Action No. 06-4983, 2007 WL 172396, at *4-6 (E.D.Pa. Jan 18, 2007).  Any nationally prominent university would engage in these types of activities with numerous institutions in any number of states.  However, these activities do no suggest a specific targeting of the forum state of Pennsylvania; only a general participation in interstate academic activities that happen to take place in the forum state.[1] *See Gallant*, 111 F.Supp.2d at 631-42.

Likewise, Dr. Kim's contacts with the forum state of Pennsylvania do not rise to the level needed to establish general personal jurisdiction.  Dr. Kim has shown that he does not currently reside in Pennsylvania nor has he ever resided in the state, he does not own real property or lease property in the state, he does not own or have any business affiliations in Pennsylvania, and he has never been employed by an institution or organization in the state. (Kim Decl. ¶¶ 1-9.) During his time as president of Dartmouth College, Dr. Kim played golf and participated in fundraising activities with Dartmouth College graduates located in Pennsylvania. (Id. at ¶ 9.) Though Isaacs claims that these activities, along with a recent speech given in Philadelphia, are

---

[1] Although one case in this district did find that a national university had established sufficient contacts upon which to base jurisdiction, in that case the university had registered to do business in Pennsylvania, had operated an office in Pennsylvania for forty five years, had full time and part time staff at its Pennsylvania office, paid state and local taxes, leased property, and advertised in the state using a billboard featuring the university name. *See Duchesneau v. Cornell University*, Civil Action No. 08-4856, 2009 WL 3152125, at *4 (E.D.Pa. Sept. 20, 2009).  These types of specific and significant contacts are absent in this case and in the cases previously cited.

enough to establish minimum contacts (Pl.'s Addendum to Resp. to Mot. to Dismiss for Lack of Jurisdiction 4), these interactions fail to represent contacts "so 'continuous and systematic' as to render [Dr. Kim] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A.*, 131 S.Ct. at 2851 (citation omitted).

**This Court Lacks Specific Personal Jurisdiction Over All The Dartmouth Defendants As To All Claims**

Isaacs' breach of contract claim against Dartmouth College is duplicative of the breach of contract claim against MHMH, and fails for the same reasons.  Isaacs argues in his response to the Dartmouth Defendants' Motion to Dismiss that his claim for jurisdiction is based on the two letters Dartmouth College sent to Isaacs in Pennsylvania notifying him of his termination from the residency program and the hearing taking place in New Hampshire. (Pl.'s Resp. in Opp'n to Dartmouth Defs.' Mot. to Dismiss 4.)  These letters send by Dartmouth College, however, do nothing to show that Dartmouth College aimed its actions at the forum state as opposed to Isaacs, who simply happened to be residing within it. *See Walden*, 134 S.Ct. at 1122-23.

Isaacs' claim against Dartmouth College for Injunctive Relief is also duplicative of his claim against MHMH, and also fails for the same reason:  there are no facts alleged that show Dartmouth College purposefully availed itself of the benefits and protections of operating in Pennsylvania in any way with regard to this claim. *See e.g.*, *Remick*, 238 F.3d at 255.

Isaacs' claims against both Dartmouth Defendants for conspiracy, intentional infliction of emotional distress, and civil obstruction also fail under minimum contacts analysis.  Here, Isaacs fails to allege any facts that suggest the Dartmouth Defendants, through their actions, availed themselves of the benefits or protections of the state of Pennsylvania. *See e.g.*, *Remick*, 238 F.3d at 255.  Isaacs has not alleged that the decision to dismiss Isaacs or the deletion of his email account was made in Pennsylvania, and though he claims that Dr. Kim's golfing and fundraising

23

activities are sufficient to establish minimum contacts (Pl.'s Addendum to Resp. to Mot. to Dismiss for Lack of Jurisdiction 4), these activities have nothing to do with the claims Isaacs brings forth.  Also, while Isaacs himself may feel injury because of his dismissal in Pennsylvania, the alleged cause of the harm did not occur in Pennsylvania, and jurisdiction cannot rest on such indirect connection alone.  *See Corrales Martin*, 2007 WL 4531028, at *8 ("[T]he proper focus is on the time of the [injurious] act, not the point at which the consequences of the act become painful.").  Moreover, because Isaacs cannot show that the Dartmouth Defendants specifically aimed their actions at the forum of Pennsylvania as opposed to Isaacs himself, Isaacs cannot establish specific personal jurisdiction under the *Calder* effects test. *See e.g.*, *Marten*, 499 F.3d at 299.

### C.  *Defendant New Hampshire Board of Medicine ("NHBM")*

Defendant NHBM argues that it is located in the state of New Hampshire and has inadequate contacts with the state of Pennsylvania for personal jurisdiction purposes.  The NHBM also argues that this Court lacks subject matter jurisdiction because it is a part of the state of New Hampshire and a state is not a "citizen" for the purposes of diversity jurisdiction. Finally, the NHBM argues that this Court should dismiss the NHBM as a defendant based on abstention doctrine and general comity principles.  Isaacs refutes that any state immunity exists and, as with the Dartmouth Defendants, asserts that because the NHBM sent him letters concerning his hearing they have established the minimum contacts needed for specific personal jurisdiction. (Pl.'s Resp. in Opp'n to Mot. to Dismiss and Req. for Appointment of Counsel 3.)

**This Court Lacks Personal Jurisdiction Over Defendant NHBM[2]**

Defendant NHBM has shown that it is an organization located exclusively in the state of New Hampshire and is authorized to take action only regarding the practice of medicine in New Hampshire. (Taylor Decl. ¶ 1; N.H. Revised Statutes Annotated § 329:2.)  The NHBM has also shown that it is an administratively attached agency of the New Hampshire Department of Health and Human Services, established to regulate the practice of medicine by doctors in New Hampshire, with the primary goal of insuring public health, safety, and welfare. *See* N.H. Revised Statutes Annotated §§ 329:1-aa; 329:2.  The NHBM's only office is in Concord, New Hampshire. (Taylor Decl. ¶ 1; N.H. Revised Statutes Annotated § 329:2.)

Here, the NHBM's limited contact outside of the state of New Hampshire involves medical students corresponding with the NHBM with regard to their application for residency at hospitals located in the state New Hampshire. (NHBM's Mot. to Dismiss. 9.)  Successful residency applicants, the NHBM notes, are required to obtain a training license from the NHBM to allow them to function as doctors during their residency. (Id.)  In this way, the NHBM argues, it functions like a medical school or a national university, accepting correspondence from interested parties and making some limited communications with a wide swath of individuals from around the nation.  In fact, the NHBM argues that it has less contact with out-of-state

---

[2] As this Court finds that Isaacs' claim fails on personal jurisdictional grounds, it declines to address the NHBM's arguments with regard to subject matter jurisdiction or abstention doctrine. This Court's discretion to do so is supported by ample precedent.  In *Ruhrgas AG v. Marathon Oil Co.*, the Supreme Court held that federal courts are not generally obligated to address "jurisdictional issues" in any particular order. 526 U.S. 574, 584 (1999).

> "[A] court that dismisses on . . . non-merits grounds such as . . . personal jurisdiction, before finding subject-matter jurisdiction, makes no assumption of law-declaring power that violates the separation of powers principles . . . It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits."

*Id.* at 584-86 (citing *In re Papandreou*, 139 F.3d 247, 255 (D.C. Cir. 1998)); *see also In re Hechinger Inv. Co. of Delaware, Inc.*, 335 F.3d 243, 251 (3d Cir. 2003) ("The language of the Court in *Ruhrgas* makes it clear that, by 'jurisdictional issues,' the Court meant those issues that a federal court must address before it possesses the power to reach the merits of an action.").

individuals than a national university because it does not actively recruit applicants. (Id.)  Isaacs does not refute any of these assertions or arguments but instead argues that because the NHBM sent him correspondence concerning the license application, they have at least established the minimum contacts required to attain specific personal jurisdiction. (Pl.'s Resp. in Opp'n to Mot. to Dismiss and Req. for Appointment of Counsel 3.)   The NHBM has shown that, like Dartmouth College and MHMH, it lacks the "continuous and systematic" contacts with the forum state of Pennsylvania required for general personal jurisdiction and its limited correspondence with applicants across the nation fails to showcase any particular conduct aimed specifically at the forum state. *See e.g., Goodyear Dunlop Tires Operations, S.A.*, 131 S.Ct. at 2851; *Gehling*, 773 F.2d at 541-43; *Corrales Martin*, 2007 WL 4531028, at *5-8.

Additionally, Isaacs' only claim against the NHBM is a claim for Injunctive Relief based on the NHBM's request in February 2014 for Isaacs to attend a hearing over whether it was an improper action on Isaacs' part not to disclose his California history in his residency application and Isaacs' resultant fear of an adverse ruling. (Am. Compl. ¶¶ 33, 55.) Isaacs argues that the NHBM's letter communications are sufficient to establish minimum contacts, however, the sparse letter correspondence to Isaacs here is *de minimis*, and does nothing to show that the NHBM aimed its actions at the forum state as opposed to Isaacs himself or availed itself of any of the benefits or protections of the state of Pennsylvania.  *See e.g., Walden*, 134 S.Ct. at 1122-23; *Remick*, 238 F.3d at 255; *Marten*, 499 F.3d at 299.  As a result, of these deficiencies, Isaacs cannot establish specific personal jurisdiction under minimum contacts analysis or the *Calder* effects test.

> **D. Defendants Arizona Board of Regents ("ABOR"), University of Arizona Health Science Center ("UAHSC"), and Dr. Amy Waer ("Dr. Waer") (collectively, "Arizona Defendants")**

The Arizona Defendants[3] argue that Isaacs' claims against ABOR and UAHSC are barred under the Eleventh Amendment.  Additionally, the Arizona Defendants argue that Dr. Waer is located in the state of Arizona and has no connection to the Commonwealth of Pennsylvania for the purposes of personal jurisdiction.  Lastly, they argue that Isaacs' Complaint fails to state a claim upon which relief can be granted.  Isaacs makes no effort to counter the Arizona Defendants and has failed to submit any response to oppose the Arizona Defendants' arguments.

**This Court Lacks Subject Matter Jurisdiction Over All Arizona Defendants**

It is well-settled that, due to Eleventh Amendment immunity, a state is not a citizen for purposes of diversity jurisdiction. *Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973); *Ramada Inns, Inc. v. Rosemount Memorial Park Ass'n*, 598 F.2d 1303, 1306 (3d Cir. 1979); *Harvey v. Blockbuster, Inc.*, 384 F.Supp.2d 749, 754 (D.N.J. 2005).  Isaacs' Amended Complaint claims diversity jurisdiction under 28 U.S.C. § 1332 as a means of supporting this Court's subject matter jurisdiction over the Arizona Defendants. (Am. Compl. ¶ 1.) Additionally, Isaacs presents no federal claims under which jurisdiction may be established apart from diversity citizenship. (Id. at ¶¶ 34-56.)  The Arizona Defendants argue that because ABOR (and UAHSC resting under it) are arms of the state of Arizona, they cannot be sued in this Court due to Eleventh Amendment immunity. (Arizona Defs.' Mem. of Law in Supp. of Mot. to Dismiss 5-7.) Moreover, the Arizona Defendants claim that due to the same immunity, Dr. Waer, who was employed by ABOR at all relevant times, cannot be sued in this Court in her official capacity.

---

[3] The University of Arizona Health Science Center is referred to by the Arizona Defendants as "the College of Medicine of the University of Arizona" in their briefings. (Donzuso Decl. ¶ 1.)

(Arizona Defs.' Mem. of Law in Supp. of Mot. to Dismiss 7-12; Waer Aff. ¶¶ 3-6.) Isaacs fails to challenge any of these claims.  As the Arizona Defendants here do not challenge any of the factual allegations upon which jurisdiction rests, this Court will look at this as a facial attack to subject matter jurisdiction. *See e.g., Mortensen,* 549 F.2d at 891.

The Arizona Defendants present ample citation to Arizona federal and state courts, holding that ABOR is a part of the state of Arizona and is therefore protected by Eleventh Amendment immunity. *See Ansel Adams Publishing Rights Trust v. PRS Media Partners, LLC*, 502 Fed.Appx. 659, 660-62 (9th Cir. 2012) (ABOR, as the governing body of Arizona's public universities, is immune from federal law suits pursuant to the Eleventh Amendment); *Gorney v. Arizona Bd. of Regents*, No. CV-13-00023-TUC-CKJ(HCE), 2013 WL 5348304, *3 (D. Ariz. Sept. 24, 2013) ("The [Arizona Board of Regent]'s funds consist of state funds and it is treated as the State of Arizona pursuant to Arizona law."); *Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345, 1349 (9th Cir. 1981) *abrogated on other grounds by Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985) (en banc) ("The Arizona Board of Regents is treated as the State of Arizona under Arizona law."); *Ronwin v. Shapiro*, 657. F.2d 1071, 1073 (9th Cir. 1981) ("[W]e conclude that the [Arizona] Board of Regents is protected by the eleventh amendment, and further, that the Board is not a "citizen" within the meaning of 28 U.S.C. § 1332."); *Arizona Bd. of Regents v. Arizona York Refrigeration Co.*, 565 P.2d 518 (Ariz. 1977).

It should be noted also that UAHSC is a non-jural entity and cannot be sued in its own name. *See Ansel Adams Publishing Rights*, 502 Fed.Appx. at 660 ("As a non-jural entity under Arizona law, the University cannot be sued in its own name; rather, the Arizona Board of Regents (Board), as the governing body for Arizona's public universities, is the proper defendant for all actions against the University.").  Even assuming this was not the case, UAHSC is an

entity under the jurisdiction and control of ABOR and as such would also be barred from suit by Eleventh Amendment immunity. *See* Arizona Revised Statutes §§ 15-1601, 15-1625.

Dr. Waer, in her official capacity as an employee of UAHSC, an entity operated by ABOR, is also entitled to Eleventh Amendment immunity. *Betts v. New Castle Youth Development Center*, 621 F.3d 249, 254 (3d Cir. 2010) ("Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity because official-capacity suits generally represent only another way of pleading an action against the state.") (citation and quotation marks omitted); *Smith v. Sec'y of Dep't of Envtl. Prot. of Pennsylvania*, 540 Fed.Appx. 80, 82 (3d Cir. 2013).

**This Court Lacks Personal Jurisdiction Over Dr. Waer**

Defendant Dr. Waer has shown that she is a resident of Tucson, Arizona and was at the relevant time and is currently employed by UAHSC, an entity operated by ABOR. (*See* Waer Aff. ¶¶ 3-6.) Dr. Waer has also shown that she has had no contact with Pennsylvania in connection with Isaacs and can recall no professional or personal contact in the state at all since a brief medical studies visit in the 1990s. (Id. at ¶¶ 11-17.) Dr. Waer maintains that she has not sought business in Pennsylvania, does not conduct business in the state, has had no personal or professional activities in the state in the last ten years, has no telephone listing or mailing address in the state, has never filed a state or local tax return in the state, and has never owned, used, possessed, rented, controlled, maintained, or had any other interest in any real property, personal property, bank account or other account in Pennsylvania. (Id.) Dr. Waer claims no professional or other licenses in Pennsylvania, no earnings from professional or business activities in the state, and no involvement with Isaacs' residency application to UAHSC. (Id. at ¶¶ 18-21.) Isaacs makes no effort to refute any of these claims.

Here, Dr. Waer's extremely limited interaction with the state of Pennsylvania prevents the finding of general personal jurisdiction. *See Goodyear Dunlop Tires Operations, S.A.*, 131 S.Ct. at 2851 (noting general personal jurisdiction is established when "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."); *Clark*, 811 F.Supp. at 1067 (noting general jurisdiction contacts must be "extensive and pervasive."). Moreover, specific personal jurisdiction is unavailing. Isaacs' claims against Dr. Waer are based on her supposed involvement in a conspiracy to prevent Isaacs from practicing medicine and the alleged emotional harm that conspiracy caused. (Am. Compl. ¶¶ 34-42.) There is nothing in Isaacs' Amended Complaint that alleges Dr. Waer made any attempt to direct her activities into the forum state of Pennsylvania. *See e.g., Walden*, 134 S.Ct. at 1122-23; *Remick*, 238 F.3d at 255; *Marten*, 499 F.3d at 299. Isaacs does not specify the whereabouts of John Does #1 or #2, nor does he specify who allegedly initiated the communication with Dr. Waer. Also, as noted above, the fact that Isaacs felt some injury in the state of Pennsylvania does not evidence intent on Dr. Waer's part to cause injury in the forum state. *See Corrales Martin*, 2007 WL 4531028, at *8 ("[T]he proper focus is on the time of the [injurious] act, not the point at which the consequences of the act become painful."). As a result of these conclusions, Isaacs cannot sustain specific personal jurisdiction against Dr. Waer under minimum contacts analysis or the *Calder* effects test and cannot maintain personal jurisdiction at all against Dr. Waer in any capacity.

IV.    **CONCLUSION**

For the reasons more fully set forth above, the Court will the grant the Motions to Dismiss submitted by the MHMH Defendants, the Dartmouth Defendants, the NHBM, and the Arizona Defendants. An appropriate order follows.